412 So.2d 586 (1982)
STATE of Louisiana
v.
Terry J. DEATON.
No. 81-KA-2427.
Supreme Court of Louisiana.
April 5, 1982.
*587 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Mike Harson, Bill Burris, Asst. Dist. Attys., for plaintiff-appellee.
Thomas E. Guilbeau, of Guilbeau & Joy, Lafayette, for defendant-appellant.
BOWES, Justice Pro Tem.[*]
The defendant, Terry J. Deaton, was convicted by a jury of second degree murder. He was sentenced to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. On appeal, defendant urges twenty-one assignments of error. Assignments of Error Numbers 1, 3, 4, 5, 15, 16, 17, 20 and 21 were neither briefed nor argued, therefore they are considered abandoned. State v. Blanton, 325 So.2d 586 (La.1976).
On October 10, 1979 at approximately 2:30 a. m., Blake Cary was stabbed and killed during an altercation in the parking lot of the Caravelle Lounge in Lafayette, Louisiana.
The defendant, Terry Deaton, entered the lounge at approximately 12:30 a. m. Deaton approached Cary, who was sitting at the bar. After a verbal exchange erupted between the two men, Deaton went outside for about five minutes and then entered the lounge a second time. A short time later, Cary, and a female companion, Linda Thomas, left the bar through a rear door and went into the parking lot. Approximately five minutes after Cary's departure, Deaton exited the lounge and an altercation ensued between the two men. As the two of them attempted to stand up from wrestling on the ground, Deaton stabbed Cary several times. Deaton then wiped the blade on his pants leg and ran out of the parking lot. The defendant was subsequently arrested.
Assignment of Error Number 2
By this assignment, defendant contends that the trial court erred in permitting the introduction of the murder weapon. The defendant argues that the defense stipulated to the length and nature of the knife and to the fact that it was the same weapon that he had in his possession prior to the killing. Therefore, he concludes that the probative value of the knife did not outweigh its prejudicial effect on the jury. He *588 further argues that the knife was not relevant to a material issue at trial.
During the trial, a police officer testified that he found the murder weapon behind the Caravelle Lounge. He identified the knife and stated that it was photographed and placed in a sealed container as evidence. At that point, defense counsel offered a stipulation as to the chain of custody of the weapon, and also stipulated that the knife in the courtroom was the same one that the defendant had on the night of the murder. The prosecutor moved that the weapon be accepted into evidence and exhibited to the jury. Defense counsel objected and argued that the exhibition of this evidence would only inflame the jury and was unnecessary in light of the stipulation. After argument, the trial court overruled the defendant's objection.
In considering whether demonstrative evidence is admissible over an objection that it is unduly inflammatory, the test to be applied is whether the proffered evidence is relevant to any material issue in dispute and, if so, whether its probative value exceeds its probative prejudicial effect. State v. Manieri, 378 So.2d 931 (La. 1980); State v. Hawthorne, 345 So.2d 1170 (La.1977).
In this case, the defendant claimed that the stabbing was committed in self-defense. The State correctly argued that the length and size of the knife was relevant to show the intent and state of mind of the defendant. Defendant argued that the knife was so large that its exhibition to the jury was inflammatory. However, testimony was placed before the jury as to the size of the weapon. The jury was entitled to view the knife to determine whether the defendant would be carrying such a large weapon for the sole purpose of protecting himself in a public place. Therefore, the trial court did not abuse its discretion in admitting the murder weapon into evidence and in allowing it to be exhibited to the jury.
This assignment is without merit.
Assignments of Error Numbers 6 and 7
By these assignments, defendant contends that the trial court erred in questioning a witness and in commenting on the evidence. Defense counsel argues that he was not able to attack the credibility of Ray Allen Landry, one of the State's key witnesses, because of the trial judge's unwarranted and prohibited intervention.
The defense complaint centers around the following portion of the transcript:
Mr. Macmanus (defense counsel)
Q Have you been convicted of any crimes?
A Not in the lastpast, I'd say, two (2) years.
Q But, that's not my question. Have you ever been convicted of any crimes?
A Yes, sir.
Q What are they?
THE COURT: You don't remember, Mr. Landry?
THE WITNESS: I don't remember.
MR. MACMANUS: I have no further questions. You may step down. I have no further questions.
No objection was made by defense counsel when the trial court questioned the witness.
This court has consistently held that an objection not contemporaneously raised in the lower court or ruled on by the trial judge cannot be availed on appeal. State v. Johnson, 404 So.2d 239 (La.1981); State v. Lawson, 393 So.2d 1260 (La.1981). Hence, absent an objection here, nothing is presented for our review.
In any event, the trial judge's questioning of the witness was not reversible error. The State argued that the trial judge asked the question only after the witness did not answer for a substantial period of time. Additionally, defense counsel never questioned the witness further on this point and the witness clearly admitted to the crimes.
This assignment is without merit.
Assignments of Error Numbers 8 and 9
By these assignments, defendant contends that his prior defense counsel erred in failing to object to the improper *589 questioning of the State's key witness by the trial judge and to the trial judge's comments on the evidence.
As noted in Assignments of Error Numbers 6 and 7, supra, defense counsel failed to object to the trial judge's question to the witness. Therefore, these issues may not be raised on appeal. State v. Johnson, 404 So.2d 239 (La.1981). Additionally, defendant's claim of ineffective assistance of counsel is more properly raised by application for a writ of habeas corpus in the district court, where a full evidentiary hearing may be conducted. State v. Hicks, 395 So.2d 790 (La.1981).
This assignment lacks merit.
Assignments of Error Numbers 10, 11, 12, 13, 14, 18 and 19
By this assignment, defendant contends that the trial judge erred in refusing to allow defense counsel to question witnesses concerning the dangerous character of the victim. Evidence of the victim's dangerous character supports a plea of self-defense because it is relevant to show that the victim was the aggressor and that the defendant's apprehension of danger was reasonable. State v. Lee, 331 So.2d 455 (La.1976); State v. Green, 335 So.2d 430 (La.1976). The foundation for admissibility of such evidence is found in La.R.S. 15:482:
"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
During the trial, defense counsel attempted to ask several witnesses about the reputation of the victim. The prosecutor objected on the ground that the defense counsel had not laid a proper foundation for this testimony under R.S. 15:482. The trial court sustained the objection, ruling that there was insufficient evidence to constitute an "overt act" on the part of the deceased.
Subsequent to the trial court's ruling, defendant requested to make a proffer of the excluded evidence. The trial judge granted the motion and the defense called five witnesses to testify to the victim's bad character. The witnesses either testified that they had heard a few people from different towns talk about the victim, or that the persons, with whom they had discussed the victim, had been in a fight with him. In our opinion, these witnesses did not have the requisite qualifications to testify to the character of the victim.
La.R.S. 15:479 defines proof of character:
Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him.
Character testimony is the opinion by a member of the community exposed over an extended period of time to hearing the discussion by other members of the community shared by himself and the person whose reputation is at issue. Before being permitted to testify, the reputation witness must be shown to be qualified to testify on the subject as a member of the community in a position to speak with authority on the subject. State v. Frentz, 354 So.2d 1007 (La.1978).
None of the purported character witnesses belonged to the same community as the victim, nor was their opinion based on long-standing contacts with the same community as the victim. Debra Deaton, the defendant's sister, admitted having only talked to people from the Lafayette area, the victim being from Rayne, Louisiana. In addition, Ms. Deaton could only testify that the victim was a good fighter and that he was not afraid of anyone. This trait was not relevant to show that the defendant acted in self-defense.
Mr. Jerry Guillot testified that he had only discussed the victim with about five people. Some of these people thought that Blake Cary was a nice person. The others could only state that Cary was a well-renowned boxer. When asked if the victim had a reputation for being mean or vicious, he answered, "I don't know that at all." This witness was not competent to testify to Blake Cary's bad reputation in the community.
*590 Another witness, Mr. Wade Bergeron, stated that he had discussed the victim's reputation with less than five individuals from the Lafayette area.[1] The only opinion he had heard was that Blake Cary would not quit a fight until it was over. Mr. Bergeron candidly admitted that he did not know of the victim's reputation for starting fights, which was the relevant consideration in this case.
Two other witnesses, Reggie Angelle and Steve Menard, testified that they had each discussed the victim's reputation with only two or three people. Mr. Angelle's only knowledge was that Blake Cary was a "bad dude", which he interpreted to mean that he was a good fighter. Steve Menard testified that he really didn't know if the victim had a character trait of meanness. When asked if the people he talked to had an opinion as to Blake Cary's character for fighting, Menard only related an incident where Cary had hit him.
Based on this testimony, the witnesses would not have been allowed to testify to the victim's character. Since the character testimony would have been inadmissible under R.S. 15:479, we do not have to address the issue of whether an adequate foundation had been laid under R.S. 15:482 for admitting evidence of the victim's dangerous character.
Accordingly, this assignment is without merit.

DECREE
For the foregoing reasons, the defendant's conviction is affirmed.
NOTES
[*] Judges Fred S. Bowes and Nestor L. Currault, Jr. of the Twenty-Fourth Judicial District Court and Edward Dufresne, Jr. of the Twenty-Ninth Judicial District Court participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Watson.
[1] Lafayette is approximately fourteen miles from Rayne, where Blake Cary lived.