457 So.2d 707 (1984)
STATE of Louisiana, Appellee,
v.
Raymond E. HELSLEY, Jr., Appellant.
Nos. 16095-KA and 16318-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
*711 Edward Henderson, Grambling, and John L. Sheehan, Ruston, for appellant.
William J. Guste, Jr., Atty. Gen., T.J. Adkins, Dist. Atty., Joseph A. Cusimano, Jr., Asst. Dist. Atty., Ruston, for appellee.
Before PRICE, HALL and NORRIS, JJ.
NORRIS, Judge.
In these consolidated appeals, defendant, Raymond Helsley, appeals convictions of cruelty to a juvenile in violation of La.R.S. 14:93 and unlawful transportation of explosives in violation of La.R.S. 40:1471.3 et seq., as well as consecutive sentences of ten years at hard labor and a fine of $1000 with court costs and default time of 6 months and five years at hard labor and costs with default time of 30 days. Also consolidated with these appeals is the state's motion to dismiss the defendant's appeal of the cruelty to a juvenile conviction. For the reasons hereinafter stated, we deny the motion to dismiss, affirm the defendant's convictions and amend the sentences imposed to delete the requirement that the defendant pay a fine and costs.
In order to properly address the issues presented in these consolidated matters, it is necessary that we initially chronolog in some detail the procedural posture of each respective case.
On January 7, 1983, the defendant was arrested and charged with the offense of cruelty to a juvenile. This charge resulted from allegations on the part of his eight year old daughter, Candace, that he had disciplined his other twelve year old daughter, Raylene, by striking her repeatedly with a piece of PVC pipe and a pipe wrench. Raylene disappeared the day after the reported incident and has not been found. Defendant remained incarcerated on this charge until his trial by jury which was held on June 6 and 7, 1983 after which he was found guilty as charged. On August 18, 1983, defendant was sentenced to ten years at hard labor and fined $1000 plus court costs or six months in jail upon default of payment of the fine and costs. Immediately after sentencing, via oral motion, the defendant appealed both his sentence and conviction. The trial judge set a return date on that appeal for September 30, 1983, which was extended once to October 31, 1983.
On August 3, 1983, the defendant was charged with illegal possession of explosives, illegal storage of explosives, and illegal transportation of explosives in violation of La.R.S. 40:1471.3 et seq. These charges stemmed from the defendant's having high explosive detonating cord and electric blasting caps in his residence in Union Parish which he had transported from Natchez, Mississippi in November, 1982.
In connection with these latter charges, the defendant entered into plea negotiations *712 with the state and the resulting agreement was that the defendant would plead guilty to illegal transportation of explosives, the defendant would dismiss his appeal in connection with the conviction of cruelty to a juvenile, the state would not prosecute the remaining two charges of illegal possession and storage of explosives, the state would not file a habitual offender proceeding in connection with the cruelty to a juvenile proceeding and the state would make no recommendation as to the sentence to be imposed after the plea was accepted by the trial court. On December 1, 1983, the defendant pled guilty to the offense of illegal transportation of explosives after an extensive Boykinization during which the trial judge satisified himself that the defendant was voluntarily entering this plea with a full understanding of its ramifications, including all of the terms of the agreement between the defendant and the state. Sentencing was fixed for December 21, 1983.
When the defendant appeared in court for sentencing, he attempted to withdraw his guilty plea, to have new counsel appointed to represent him and to have the trial judge recuse himself from this cause referring without amplification to a proceeding "to be" filed by the defendant in Federal Court against the sentencing judge. All of these motions were denied by the judge who then proceeded to sentence the defendant to a term of imprisonment at hard labor of five years and costs, in default of payment of costs the defendant was to serve thirty days in the parish jail. This term of imprisonment was to be served consecutively with any other sentence previously imposed. In light of the defendant's prior comments to the trial judge indicating his complete dissatisfaction with his court appointed trial counsel, counsel for the defendant asked to be allowed to withdraw from his representation. This request was granted, and the defendant, in proper person, orally moved for an order of appeal which was granted. This appeal was ordered returnable on February 10, 1984.
Both appeals have been lodged in this court, the appeal on the cruelty to a juvenile charge on October 27, 1983 and the appeal on the explosives charge on February 14, 1984.
On May 5, 1984, the state filed a motion to dismiss the appeal of the cruelty to a juvenile conviction and sentence in accord with the terms of the plea bargain entered into in the explosives case. It is the contention of the state in connection with this motion that the defendant through his agreement to the conditions of the plea arrangement waived his right to appeal his conviction of cruelty to a juvenile and the resulting sentence. This matter was previously considered by a writ panel of three judges of this court who ordered the appeals consolidated and the consideration of the motion to dismiss deferred until the merits of each appeal were considered.
The pivotal issues presented in connection with these consolidated matters are:
(1) whether the trial judge abused his discretion in refusing to allow the defendant to withdraw his guilty plea to the charge of illegal transportation of explosives;
(2) if he did not, whether the state is entitled to enforce the plea bargain and have its motion to dismiss granted by this court;
(3) if it is not, whether the following errors were committed by the trial judge during trial and sentencing in the cruelty to a juvenile proceeding:
(a) refusing to suppress the evidence seized at the time of the defendant's arrest;
(b) allowing Candace Marie Helsley to testify at the trial;
(c) allowing the following items to be introduced into evidence: pipe wrench, silver pipe wrench, pillow, blanket and drainboard; and
(d) relying on certain statements made in the presentence investigation which are uncorroborated, unreliable and unsubstantiated;

*713 (4) whether the sentences imposed in connection with both of these convictions are excessive.
For the purposes of this opinion, we will address these issues in the order in which they have been summarized above indicating in each instance the charge to which the discussion is material.

ISSUE NO. 1
When defendant appeared in court for sentencing on the explosives charge, he addressed the judge requesting that he be allowed to withdraw his formerly entered plea of guilty. In connection therewith, he alleged that his counsel had not properly represented him and both were ineffective. He further alleged that he had entered the plea of guilty because of threats, promises and intimidation and that he now wished to withdraw that plea. However, he did not complain of that provision of the plea bargain arrangement wherein he would dismiss his appeal from the prior conviction. He further requested that the matter be continued until he could obtain new counsel and that the trial judge recuse himself from this cause because of some unexplained involvement in a federal proceeding apparently to be brought by the defendant against the trial judge. He additionally sought access to legal materials for his use in preparing his defense as well as a hearing aid or transliterator to assist him in court because of an alleged hearing problem. All of these allegations were presented without the taking of any evidence and no facts were revealed by the defendant in support of them.
Thereafter, the trial judge specifically found that there had been no intimidation or inducement which had caused the defendant to plead guilty to this charge. In arriving at this finding, the trial judge referred to the extensive Boykinization at the time of the taking of the plea which reflected that the defendant had knowingly and intelligently entered the plea after being advised of all of its consequences. It was the express opinion of the trial judge that the unsupported allegations of the defendant were untrue, that the defendant had been an agitator and a troublemaker from the time of his initial incarceration and that defendant's counsel had done a good job on the defendant's behalf. Based on these findings, the trial judge denied the motion.
La.C.Cr.P. Art. 559 provides that "[t]he court may permit a plea of guilty to be withdrawn at any time." Clearly, discretion to permit the withdrawal of a guilty plea is vested in the trial judge. However, that discretion cannot be exercised arbitrarily and abuse of discretion can be corrected on appeal. State v. Jenkins, 419 So.2d 463 (La.1982); State v. Franks, 391 So.2d 1133 (La.1980).
In the instant case, the record is fully supportive of the trial judge's ruling. It reflects that the defendant was extensively and thoroughly interrogated at the time that the plea was entered and prior to its having been accepted. This interrogation specifically covered the points defendant now alleges makes his plea defective. Defendant responded he was satisfied with his representation and that his plea was voluntary and not a result of threats, promises or intimidation. Defendant was clearly informed of the charges pending against him and expressly stated that he understood those charges. Defendant was also thoroughly informed of all of the constitutional rights he would forego by pleading guilty. There is simply nothing contained within this record that would support a finding that any of the allegations of the defendant offered in support of his motion to withdraw his guilty plea have any merit. Rather, the record indicates the contrary; that is, that the defendant had ample assistance of counsel in arriving at his decision to plead guilty, that the guilty plea was made voluntarily and with a full understanding of the nature of the charges as well as the consequences of the plea.
Accordingly, the trial judge did not abuse his discretion by refusing to permit the defendant to withdraw his guilty plea. Compare State v. Franks, supra. This assignment of error is without merit.

*714 ISSUE NO. 2
Some six months after the plea of guilty was entered in the explosives case which was approximately seven months after the record was lodged in this court in the case involving the cruelty to a juvenile conviction, the state filed a motion to dismiss the defendant's appeal in the cruelty to a juvenile case. The sole allegation of the motion was that the appeal should be dismissed on the grounds that the defendant had waived his appeal of that conviction and sentence as a result of the plea negotiations in the explosives case which formed the basis for the guilty plea entered therein. As earlier mentioned, one of the considerations which formed the basis for that agreement was the defendant would dismiss his appeal formerly granted from that conviction and sentence. It is noteworthy that while it is clear that there was an agreement between the state and the defendant that the defendant would dismiss this appeal, that the defendant has taken no affirmative steps to dismiss this appeal to date and that he has no intentions of taking any such steps, as evidenced to some degree by his attempt to withdraw his guilty plea in the explosives case and the trial court's subsequent appointment of legal appellate counsel at the defendant's request. The plea was taken on December 1, 1983. At that time, the record in the cruelty to a juvenile case had been lodged in this court since October 27, 1983.
While it is clear that a defendant may be entitled to specifically enforce a plea bargain and that a co-defendant who benefits from a plea bargain may specifically enforce that bargain, we are aware of no cases which have granted the right of the state to specifically enforce the provisions of a plea bargain. See State v. Hayes, 423 So.2d 1111 (La.1982); State v. Cooper, 449 So.2d 1376 (La.App. 2d Cir.1984).
In State v. Nall, 379 So.2d 731 (La.1980), the Supreme Court addressed the issue of whether the defendant has the right to compel compliance with a plea bargain. The Nall plea bargain provided that the state would reduce the charge against the defendant from murder to manslaughter and the defendant would receive a ten year sentence. In return for this agreement by the state, the defendant would agree to plead guilty to manslaughter, accept the ten year proposed sentence and further, give a confession which involved the participation in the crime of another person. The defendant would also testify against that person in the state's forthcoming prosecution of him. Thereafter, and pursuant to this agreement, the defendant gave another statement to the police which deviated considerably from the statement which he had given his defense counsel on which the state had relied in arriving at the plea arrangement and which formed the basis of the plea bargain. After obtaining this statement, the state withdrew from the plea agreement. The defendant then filed motions to compel performance of the plea arrangement. While this plea arrangement had the final approval of a district judge, it is clear from the opinion that no plea had been entered prior to the state's withdrawal. The Nall court concluded that a plea bargain is a contract between the state and one accused of a crime, applying provisions of the Louisiana Civil Code to find that the cause of the state's agreement was the diminished culpability of the defendant's participation in the murder together with testimony implicating another as the culprit of the crime. Thus, when the defendant's statement on which the agreement was based turned out to be false, the agreement between the parties fell because of a failure of cause, and the state could be relieved from its obligation under the plea bargain agreement. In a cogent concurrence, Justice Dennis indicated his concern with the utilization of principles of contract law as the only basis for the analysis of the case because "... the constitutional right of a person accused of a crime to fairness is wider in scope than that defined by the law of contract." [Emphasis supplied.]
A defendant's constitutional right to appeal is established by Article I, Section 19 of the Louisiana Constitution of 1974 which provides:

*715 No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived.
This article has been judicially interpreted to confer on the accused, and the accused alone, the right to waive this right. State v. Marcell, 320 So.2d 195 (La.1975). Any waiver of a right to appeal must be an informed one. State v. Simmons, 390 So.2d 504, 506 (La.1980).
A plea of guilty may operate as a waiver of the right to appeal because a plea of guilty normally waives all non jurisdictional defects in the proceedings prior to the plea in the case in which the defendant has pled guilty. State v. Torres, 281 So.2d 451 (La.1973). However, this rule has been held inapplicable to the instances in which the defendant pleads guilty expressly conditioned upon a plea bargain in which the defendant reserves his right to obtain appellate review of pre-plea rulings by the trial court. State v. Crosby, 338 So.2d 584 (La.1976). However, these rules which operate in effect as waivers of certain appellate rights apply to situations which are factually distinguishable from the instant case which involves a plea bargain that extends to another criminal conviction which has already been appealed.
Thus, our issue is whether under these circumstances, the plea alone, without further action on the part of the defendant prior to sentencing, operated as a dismissal and/or waiver of his already pending appeal which the state is entitled to have enforced by this court.
In order to dismiss an appeal which has been timely lodged in an appellate court, a defendant must take some affirmative action; that is, a motion must be filed and granted by the appellate court in accordance with its rules. See Rule 2-8, Uniform Rules, Courts of Appeal. Thus, although a defendant agrees at one time, even during a plea of guilty in another case, to waive this right to appeal, such agreement in and of itself does not operate as a waiver of this fundamental right. The further affirmative action of actually dismissing the prior appeal is necessary.
Under the Nall rationale, the state certainly had the right to require that the defendant honor his obligations under the plea bargain and file the appropriate motion to dismiss prior to sentencing or in lieu thereof to withdraw from the plea agreement. However, rather than exercising this right, the state did nothing when the defendant sought to withdraw his guilty plea at a time when it was apparent that not only had he not fulfilled his obligations under the plea arrangement but also that he did not intend to honor that part of his agreement. It is the usual practice in a plea bargain arrangement to require that the defendant take all steps to comply with the plea bargain prior to sentencing. By its inaction prior to sentencing, the state has waived any right to compel compliance.
We are also of the opinion that it is fundamentally unfair to allow the state to remain silent through the defendant's motion to withdraw his guilty plea and the sentencing process and six months later attempt to dismiss his appeal of the prior conviction. If the state's prime motive in entering the plea arrangement had been to have the defendant's prior appeal dismissed, it should have insisted on compliance prior to sentencing or sought to nullify the plea bargain.
Furthermore, because we have the full record available for our review, we feel that our failure to review it at this stage of the proceeding would be a wasteful use of judicial and legal resources because appellate review at this point could serve to preclude problems which may later arise through the avenues of post conviction relief applications, both in state and federal courts. All legal issues aside, the most practical and fair disposition indicates, under the present circumstances, that we should deny this motion and review the defendant's assignments of error.
*716 Accordingly, the state's motion to dismiss the appeal of the cruelty to a juvenile conviction and sentence is denied.

ISSUE NO. 3
A. SUPPRESSION OF EVIDENCE
The defendant argues that the trial court erred in refusing to suppress evidence seized at the time of the defendant's arrest on the charge of cruelty to a juvenile and in finding that the search of his residence had been consented to by the defendant.
On January 7, 1983, Union Parish deputies arrived at the residence of the defendant armed with an arrest warrant. At that time, the defendant was informed of the charges against him and placed under arrest after having been advised of his Miranda rights. Thereafter, the officers requested permission from the defendant to search his residence for items connected with the crime. After the defendant indicated that he would consent to such a search, the officers produced a consent to search form and read and explained it to the defendant. Thereafter, the defendant signed his name on the blank at the top of the form rather than at the bottom where the signature of the consenting party is customarily affixed. This form was witnessed by the deputy who had read and explained it to the defendant as well as two other deputies who were present when the explanation was given and the consent obtained. The mobile home where the defendant resided and its outside premises were then searched. Certain items of physical evidence were seized.
Thereafter, the defendant and the items of evidence were transported to the sheriff's office where another deputy typed up a list of the items seized as a result of the search. Contained within this list of items was a statement that these items had been seized at the home of the defendant with his permission after a consent to search form was signed by him. This inventory list was signed by the defendant and five witnesses.
At the hearing on the motion to suppress, the deputies who were present at the residence of the defendant and those who were present at the sheriff's office when these events occurred testified. It was their uncontradicted, unrebutted, consistent testimony that the defendant had been informed of the nature of the charge against him, that he had been advised of his rights, that he had been placed under arrest and that thereafter he had consented to a search of his residential premises, all of which was accomplished only after the consent was obtained and without any force, duress, or intimidation on the part of the officers.
After considering all of the evidence, the trial judge expressly found that the defendant's signature appeared on both the consent to search form and the inventory list of items seized which contained the affirmation that the items had been taken with his permission after the signing of the consent to search form. The trial judge further found that the testimony was uncontradicted that the defendant was informed of the charge and that the officers requested permission to search which was granted knowingly, voluntarily and intelligently on the part of the defendant. Accordingly, the motion was denied.
The thrust of defendant's argument is that because the defendant's signature was placed at the top of the form rather than on the bottom, it only evidences that the defendant was filling in the blank rather than consenting to the search. It is further argued that at the time that any consent was obtained that the defendant had no choice but to agree to the search because of the intimidating presence of the officers. Finally, it is argued that there were no exigent circumstances that required an immediate search of defendant's residence without a warrant. These arguments are without record support and are meritless.
It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. State v. Bodley, 394 So.2d 584 (La.1981); State v. Henry, 440 So.2d 872 (La.App. 2d Cir.1983). A *717 consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship with the premises or effects sought to be inspected. State v. Bodley, supra; State v. Henry, supra. While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove that the consent was given freely and voluntarily. Necessarily, voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances of each case, which determination is to be given great weight upon appellate review. State v. Edwards, 434 So.2d 395 (La.1983).
It is undisputed that the defendant was the resident of the premises actually searched. The trial judge expressly found that the consent was freely and voluntarily given by the defendant. Our review of the evidence compels us to conclude that the trial judge properly analyzed the totality of the circumstances in this case and properly determined that the defendant had freely and voluntarily allowed the deputies to execute the search. Accordingly, all of the requisites for a valid consent search are present, and this assignment of error is without merit.
B. COMPETENCY TO TESTIFY
The defendant next argues that it was error for the trial judge to allow the defendant's eight and one-half year old daughter, Candace to testify at trial contending that the questions propounded by the trial judge in his interrogation of Candace were general questions which any eight year old could have answered and were insufficient in detail to test her understanding of the consequences of her testimony.
The trial judge's interrogation of Candace occurred outside the presence of the jury and prior to her testifying. Included within his examination were questions concerning her age, her birthdate, and her school performance. She replied that her birthday was on June 14, that she had passed to the fourth grade and that she had never failed in school. She declared that she knew it was wrong to tell a lie and that she would get in trouble for lying. She promised to tell the truth and reiterated that she knew she would get in trouble if she did not. Despite being given the opportunity to do so, defense counsel asked no further questions of Candace at this point. After questioning and observing Candace's demeanor on the stand, the trial judge ruled that she was competent to testify.
La.R.S. 15:469 provides:
Understanding and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
In applying this statute, the rule is that the determination of the trial judge as to whether or not a child has the required sufficient understanding is entitled to great weight because it has the advantage of seeing and hearing the witness. State v. Edwards, 420 So.2d 663 (La.1982) eight year old girl had sufficient understanding and should have been allowed to testify. See also State v. Thompson, 364 So.2d 908 (La.1978)eight year old third grade boy had sufficient understanding to testify; State v. Francis, 337 So.2d 487 (La.1976) eight year old girl had sufficient understanding to testify; State v. Humphrey, 412 So.2d 507 (La.1982)seven year old boy at the time of the crime occurrence and nine years old at the time of trial had sufficient understanding to testify.
Without the benefit of observing the demeanor of Candace on the witness stand, a reading of the transcript pertaining to her examination confirms the correctness of the trial judge's ruling. Her subsequent testimony also supports a finding that she had sufficient understanding to testify as a witness. The transcript indicates that she was alert, forthright and accurate in her replies. There is no evidence *718 of any significant confusion in her replies or responses not only to the direct examination conducted by the prosecutor but also to the extensive cross examination conducted by defense counsel. In fact, nothing in the record would lend support to a conclusion that the trial judge erred in finding Candace to be qualified to be a witness. Consequently, this assignment of error is without merit.
C. ITEMS OF EVIDENCE
The defendant argues that it was error for the trial judge to allow the introduction of a pipe wrench, a silver pipe wrench, a pillow, blanket and a drainboard into evidence. After reviewing the record in this regard, we note that the blanket and drainboard referred to by the defendant were never in fact admitted into evidence. Therefore, there is nothing for us to review pertaining to these items. In connection with the remaining items, the defendant argues that these items were irrelevant because there is no evidence in the record that the wrenches were actually utilized to strike the victim and that the admission of the pipe wrench and the pillow were unduly prejudicial because they were found to contain traces of human blood which could not be positively identified as belonging to the victim.
The rule concerning the introduction of demonstrative evidence is that the foundation laid for its admission must establish that it is more probable than not that the evidence has some relevance which the trial court considers sufficient to warrant its introduction. Ultimate connexity is a factual determination to be made by the jury. State v. Prestridge, 399 So.2d 564 (La.1981). In considering whether demonstrative evidence is admissible over objection that it is unduly inflammatory, the test to be applied is whether the proffered evidence is relevant to any material issue in dispute, and if so, whether its probative value exceeds its probable prejudicial effect. State v. Deaton, 412 So.2d 586 (La. 1982); State v. Manieri, 378 So.2d 931 (La.1979); State v. Hawthorne, 345 So.2d 1170 (La.1977). Finally, a trial judge's ruling concerning the relevancy of evidence will not be disturbed on appeal in the absence of a showing of a clear abuse of discretion. State v. Bolton, 408 So.2d 250 (La.1982).
Candace identified the silver pipe wrench as the wrench which she observed the defendant use to strike her sister. Her testimony established that it was more probable than not that this wrench was connected with the crime. Its probative value exceeded any prejudicial effect which might have resulted from its admission. Furthermore, defense counsel failed to make a contemporaneous objection to the admissibility of this particular wrench thereby leaving nothing for us to review in this regard. State v. Hysell, 364 So.2d 1300 (La.1978).
Although the other pipe wrench was not actually identified by Candace as one which she observed the defendant use to strike her sister, Candace's testimony was to the effect that she continued to hear her sister scream after she went into the other room to go to bed. She further testified that during the beating which she observed that the silver pipe wrench had been broken. Furthermore, this particular pipe wrench contained traces of human blood and was found in the kitchen area in a box with other of the defendant's tools. This box was approximately ten feet from the kitchen drain, the area in which the beating occurred, and was lying on top of the silver pipe wrench. Under these circumstances, the trial judge concluded that the relevance of this item of evidence was related to the beating which obviously continued outside the vision of the eyewitness but within her hearing. Its probative value in this regard exceeded any prejudicial effect which may have resulted from its admission. Accordingly, there has been no showing of a clear abuse of the trial judge's discretion in his ruling that there was sufficient relevance to warrant the introduction of this evidence.
*719 Finally, the pillow introduced into evidence was seized from the bed of the victim and contained a small drop of human blood. However, there is no record evidence to connect this pillow to the beating of the victim because there was no evidence that the victim was ever near the pillow subsequent to the administration of the beating; ergo, we are of the opinion that the state failed to prove more probably than not the pillow's connexity with the crime. Accordingly, it was error for the trial judge to admit this pillow into evidence. However, its admission is not so prejudicial as to warrant a reversal of this conviction in light of the fact that there was no real attempt made by the prosecutor to exploit the admission of the pillow and the amount of blood on the pillow was miniscule. The danger in admitting evidence not shown to be connected to a crime is that the jury will infer such a connection from a mere viewing of the evidence. State v. Landry, 388 So.2d 699 (La.1980). Even had such an inference been fostered by the mere admission of this pillow, in light of the other admissible evidence made available for the jury's consideration, this erroneous inference is not so prejudicial as to compel reversal. La.C.Cr.P. Art. 921.
D. INFORMATION IN PRE-SENTENCE INVESTIGATION REPORT
The defendant next argues that it was error for the sentencing judge to rely upon certain statements made in the presentence investigation report which were uncorroborated, unreliable and unsubstantiated as a basis for the maximum sentence imposed. It is contended the presentence investigation revealed that the defendant had submitted to polygraph examination and psychological stress evaluations which indicated that he had, in fact, murdered the missing victim. On appeal, defense counsel contends that trial counsel objected to this information and that this information had been contradicted by the defendant. Defendant's position is that had these test results not been considered by the sentencing judge that the sentence imposed would have been for a lesser duration.
It is noteworthy that defense counsel's objection to the information contained within the presentence investigation report rather than coming prior to sentencing of the defendant on this charge on August 2, 1983, was made in a letter addressed to the sentencing judge on December 21, 1983. Although defense counsel had been given an opportunity to review the presentence report to rebut any erroneous or prejudicial false information, he did not avail himself of the opportunity prior to sentencing. In fact, at the sentencing hearing, the following colloquy occurred:
THE COURT: * * * The record will show that the sentencing considerations have been presented to the defendant through his counsel before sentencing to afford the opportunity for review and I believe also Mr. Sharp, in addition to the Court's reasons in support of sentence, that you have accepted the pre-sentence investigation report in my office last week.
MR. SHARP: Yes, sir, that's right.
THE COURT: Do either counsel have anything to say prior to sentencing?
MR. SHARP: I don't, Your Honor.
* * * * * *
Thus, there is no showing of record that the defendant attempted to rebut any of the information contained within the report. While the defendant is guaranteed the right to contest allegations in a presentence report, defense counsel must timely request review of the report and must show that the report relied upon by the trial judge contained false information prejudicial to the defendant. See State v. Washington, 414 So.2d 313 (La.1982); State v. Carthan, 377 So.2d 308 (La.1979); State v. Brown, 440 So.2d 994 (La.App. 3d Cir.1983). It necessarily follows that these steps must be accomplished prior to sentencing rather than on appeal. Because the defendant did not take any affirmative steps to contradict, contravene, question, traverse or rebut the allegations now complained of which were contained in the presentence report, he has waived the opportunity *720 to rebut that information on appeal. Under the circumstances, we find no merit to defendant's contention on appeal that the sentencing judge considered any prejudicial or unsupported facts in the presentence report.
Furthermore, although we have found that the defendant has waived any right of review of this assignment of error, we note parenthetically several factors which would cause us to conclude were we to review this assignment that it does not merit reversal. While it is correct that mere suspicion of a defendant's implication in another offense is not sufficient to warrant consideration of the other offense as a major factor in imposing sentence for the unrelated offense, a case must be remanded to the district court for re-sentencing based on proper considerations only if in the absence of the improperly considered evidence, the facts of the case will not support a sentence actually imposed. Compare State v. Green, 440 So.2d 847 (La. App. 2d Cir.1983). For the reasons hereinafter set forth in connection with defendant's assignment of error regarding the excessiveness of the sentence, we find no necessity for a remand in this case. Although the sentencing judge alluded to these facts in his reasons in support of his sentence, he placed no undue emphasis on these facts and the record itself, as well as the other reasons given in support of the sentence, clearly support the sentence imposed even when the information complained of is deleted.
This assignment of error is without merit.

ISSUE NO. 4
The defendant argues that the sentences imposed in both cases are excessive, harsh, without necessity for purposes of rehabilitation and disproportionate to the crime actually committed.
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment. Although a sentence is within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence constitutes excessive punishment if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). To prevent the possible imposition of excessive punishment and to guide the trial court in its sentencing tasks, the legislature enacted La.C.Cr.P. Art. 894.1 which sets forth factors which justify a sentence of imprisonment and other factors which tend to indicate suspension of sentence or probation as appropriate. State v. Smith, 430 So.2d 31 (La.1983). In imposing sentence, the sentencing judge must comply with the mandatory requirements of La.C.Cr.P. Art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and the factual bases therefor. State v. Jones, 381 So.2d 416 (La.1980). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in that article, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983); State v. Tully, 430 So.2d 124 (La. App. 2d Cir.1983). When article 894.1 has been complied with, a sentence should not be set aside as excessive in the absence of a clear abuse of the wide discretion accorded a trial judge in the imposition of sentences within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983).
In neither case does the defendant complain that the provisions of La.C.Cr.P. Art. 894.1 have not been complied with. Our review of the record in each case indicates that in each instance, the respective sentencing judge meticulously and in detailed fashion complied with the appropriate article.
In sentencing the defendant on the cruelty to a juvenile conviction, the sentencing judge, who heard all of the evidence at trial, noted the extensive criminal record of *721 the defendant, including traffic offenses, breaking and entering, assault and battery and child abuse, which resulted in sentences on six occasions. The former conviction of child abuse involved the same victim and resulted in serious injuries. Another instance of beating this child which did not lead to a conviction was noted as was the defendant's poor military record and a detainer presently in force for making a false insurance claim. While noting that these occurrences which had not resulted in convictions were not conclusive, the sentencing judge opined that they were indications of other antisocial behavior. Next noted were the polygraph examinations and psychological stress evaluations and their results. However, it was then noted that one of the most important considerations was the evidence presented at trial. From his close attention to the evidence, the sentencing judge recalled that the defendant had brutally inflicted severe pain and suffering upon his daughter which reflected his disregard for the sanctity of human life. Considered to be even more noteworthy was the fact that the victim was the defendant's daughter whom he had beaten before. It was the opinion of the judge that the defendant deserved the most serious of punishments. Because of the defendant's past criminal record and the manner in which the crime was committed it was opined that there was an undue and significant risk that the defendant would commit another crime, that he was in need of correctional treatment and a custodial environment and that a lesser sentence than the one imposed would deprecate the seriousness of the crime, the criminal conduct was based on circumstances likely to recur, imprisonment would not entail an excessive hardship on dependents and the defendant did not appear to show promise of being rehabilitated.
Based on the foregoing considerations, the sentencing judge imposed a sentence of ten years at hard labor, a fine of $1000 and costs with default time of six months in jail in lieu of payment of the fine and costs.
The record reveals that the defendant is an indigent because he has appointed counsel. State v. Williams, 288 So.2d 319 (La.1974). If a defendant is indigent, the trial court may not impose a maximum sentence of imprisonment and a fine which will cause him to be imprisoned beyond the maximum duration fixed by statute when he is unable to pay a fine. State v. Williams, supra. The imposition of the fine and costs in addition to the maximum term of imprisonment is excessive in this case because the defendant is an indigent whose financial situation is unlikely to substantially improve during the extended period of imprisonment which he is facing; thus, he will be forced to serve a longer term of imprisonment than that statutorily imposed because of his impecunious condition. Accordingly, that portion of the sentence imposing the fine and costs is vacated.
In sentencing the defendant on the illegal transportation of explosives plea, the sentencing judge noted the past criminal record of the defendant. While noting that the defendant was ineligible for probation, it was also concluded that there was an undue risk that the defendant would commit another offense if given a lesser sentence than the one imposed. From the defendant's record, the judge opined that the defendant had a propensity for violence. Explosives were noted to be things of violence which can cause damage or injury to others if not handled properly. The way in which the defendant had handled these explosives indicated to the judge that the defendant had a lack of regard for the safety of others and that these explosives had been retained for use in some manner other than that which is lawful as well as for a violent purpose. Because of the multiple offenses committed by the defendant, it was concluded that the defendant was in need of correctional treatment best provided by his confinement to an institution and that a lesser sentence than the one imposed would deprecate the seriousness of the crime.
*722 Based on the foregoing considerations and others not enumerated herein, the sentencing judge imposed a sentence of five years at hard labor and costs with default time of thirty days in jail in lieu of payment of the costs.
For the reasons hereinabove stated, that portion of the sentence imposing the costs and default time in lieu of non payment thereof is vacated.
While we are fully aware that the defendant received maximum sentences of incarceration in both of these cases and that the general rule is that maximum sentences are imposed in cases involving the most serious violations of the described offense for the worst kind of offender with nothing else justifying the discretion of the sentencing judge, we, as was the sentencing judge, are satisfied that the defendant insofar as it relates to the conviction for cruelty to a juvenile is the worst possible offender in this class. Accordingly, the maximum sentence is fully justified. Compare State v. Jones, 398 So.2d 1049 (La. 1981). Furthermore, as in the conviction for illegal transportation of explosives, when the defendant has pled guilty to an offense which does not adequately describe his conduct, this general rule regarding maximum sentences does not apply and the trial judge has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases in which a significant reduction in potential exposure to confinement has been obtained through plea bargaining. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Richardson, 446 So.2d 820 (La.App. 2d Cir. 1984). As a result of this plea bargain, the defendant reduced his maximum exposure to imprisonment from twenty five years at hard labor to five years at hard labor, a considerable and substantial benefit.
For the foregoing reasons, both sentences of imprisonment are affirmed. The sentences of imprisonment are commensurate with, rather than grossly disproportionate to, the severity of the defendant's offenses. The extended imprisonment is not needless and purposeless but is imposed to negate the defendant's opportunity to commit crimes in the future. They are adequately particularized to this defendant in light of his crimes. They certainly do not shock our sense of justice.
Accordingly, the convictions of defendant on the charge of cruelty to a juvenile and on the charge of illegal transportation of explosives are affirmed; the sentences imposed in connection with each of these convictions are vacated only insofar as they relate to the fine and the imposition of costs. Otherwise, they are affirmed. The state's Motion to Dismiss is denied.
CONVICTIONS AFFIRMED: SENTENCES AMENDED AND AS AMENDED ARE AFFIRMED: MOTION TO DISMISS DENIED.