475 So.2d 90 (1985)
STATE of Louisiana, Appellee,
v.
Jerry Lee BROWNING, Appellant.
No. 17122-KA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
Rehearing Denied September 20, 1985.
Writ Granted December 2, 1985.
*92 Sherburne Sentell, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., George H. Meadors, Asst. Dist. Atty., Homer, for appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Appellant Jerry Lee Browning was charged by bill of information with one count of manufacture of a Schedule I Controlled Dangerous Substance, in violation of LSA-R.S. 40:966 A. Pursuant to a plea bargain, he pled guilty as charged in exchange for dismissal of charges against two codefendants. He received a sentence of six years at hard labor and a fine of $5,000. He now appeals, urging eight assignments of error and a motion to strike. For the reasons expressed, we affirm.

FACTS
In September 1983, the Louisiana State Police, with the help of the FBI, were investigating an old house in Claiborne Parish where they suspected marijuana was growing. They obtained a warrant and conducted a search on September 28. Although he was not present for the search, defendant Jerry Lee Browning was renting the house and living there with his girlfriend Debra Reister and another friend, Reggie Atkins. The search turned up "sophisticated" cultivation equipment in the upstairs portion of the house. As a result of the search, Browning was charged by bill of information with the instant offense, but the bill was not filed until over a year later, on October 2, 1984. The record does not say what transpired between the time of the search and the eventual filing of the bill, except for the prosecutor's remark that the place had "burned up."
When Browning appeared for arraignment the following day, October 3, Judge Paul A. Newell asked him whether he intended to hire an attorney. Browning replied that he hired one but that he had died three weeks earlier. He further informed the court that he was able to hire an attorney but did not intend to do so "right now." The judge responded that for "purposes of arraignment only," he would appoint a member of the indigent defender board to represent Browning. The judge appointed his son, David Newell, who entered a plea of not guilty and requested a jury trial.
Later the same day, Browning and his appointed counsel reappeared before Judge Newell to announce that Browning wanted to change his plea to guilty. In the interim, Browning had reached an agreement with the state whereby all actions against Reister and Atkins would be dropped in exchange for the guilty plea. The state also wanted Browning to waive any objection to the appointed counsel's relation to the judge. The judge performed a Boykin examination and accepted the guilty plea. On December 4, he sentenced Browning to six years at hard labor and a fine of five thousand dollars.

ASSIGNMENTS NOS. 1-5
In his first two assignments of error, Browning contends he was denied the effective assistance of counsel because his appointed attorney was the judge's son and therefore had a built-in conflict of interest. The substance of this claim is that the appointed counsel, David Newell, subverted his client's interests to the feelings of respect and awe he held for his father, Judge Paul A. Newell. Browning claims the son was reluctant to argue with his father, to file motions or to enter objections, all because of his divided interests.
In his third and fourth assignments of error, Browning contends that he did not effectively waive his right to counsel because he was not adequately informed of the conflict. He concedes his guilty plea and the Boykin dialogue but claims the *93 conflict situation entitled him to a more thorough explanation of the potential dangers of the conflict.
Both of these arguments have a degree of validity. Every criminal defendant is entitled not only to counsel but to conflict-free counsel. USCA-Const. amds. 6, 14; LSA-Const. art. I § 13; State v. Franklin, 400 So.2d 616 (La.1981). Appellant has not cited, and we have not found, any cases that question the situation where father and son serve as judge and indigent defender. Most conflicts arise in the context of joint representation of codefendants, as in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1976) and Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), but they can surface in other situations. See, for example, State v. Lemelle, 353 So.2d 1312 (La.1978); Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979); People v. Lewis, 88 Ill.2d 429, 58 Ill.Dec. 743, 430 N.E.2d 994 (1981).
In the instant case, the conflict is apparent. Even though it is not as serious as in a joint representation case and does not pose an ethical bar to full representation, the situation is nevertheless conducive to divided loyalties. Zuck v. Alabama, supra. David Newell's efforts could well have been divided between Browning on the one hand and his father on the other. For example, the interest in favor of the father certainly would be strong, since David held him in ordinary parental respect, was guided in his professional footsteps, and was appointed by his father to the case. This might well be enough to affect David Newell's loyalty. We will not naively presume that the father-son relation only benefits the defendant.[1] Furthermore, the procedural law mandates the judge's recusal in this situation. LSA-C. Cr.P. art. 671(2).[2] When the law presumes a conflict of interest sufficient to mandate recusal of the judge, then the conflict is likewise sufficient to require action on the part of the attorney. The Code of Judicial Conduct also mandates recusal, and the conflict is imputable to the attorney. Code of Judicial Conduct, Canon 3 C(1)(d). Finally, the appearance of judicial impropriety or partiality is a paramount concern and is to be avoided at all costs. Code of Prof. Resp., Canon 9; State v. LeBlanc, 367 So.2d 335 (La.1979). We conclude that the concurrence of all these factors justify us in categorizing this relationship as a conflict.
Despite the conflict, Browning never voiced any objection or concern about the situation. He waived his right to "further use of an attorney at this point ... under these particulars" as part of the guilty plea, but now contends the waiver was inadequate. The state, on the contrary, asserts the validity of the waiver, the Boykin examination, and the guilty plea. We agree with appellant that rights of a constitutional dimension are not to be lightly waived. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We also agree that the guilty plea colloquy was not intended to waive the right of counsel and not sufficient to waive the right of conflict-free counsel. State v. Franklin, supra; United States v. Garcia, 517 F.2d 272 (5th Cir.1975). We are, however, bound by the rule of contemporaneous objection. LSA-C.Cr.P. art. 841 provides:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is *94 unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The requirement of an objection shall not apply to the court's ruling on any written motion.
There is not one shred of evidence in the record to indicate that Browning complained or even questioned the conflict situation, even though it was clearly pointed out to him, if not thoroughly explained. The Boykin dialogue proved that Browning was a fairly intelligent defendant who was aware of the problems. The best procedure would have been for him to ask for another attorney; this could have been construed as an objection. And yet there is nothing in the record to which we can point and identify as an objection required to preserve the error. See State v. Campbell, 404 So.2d 1205 (La.1981).
This leads directly to the next argument, which Browning argues forcefully in his fifth assignment of error. It was his attorney's duty to raise an exception to the relationship, either by moving to withdraw or by moving for recusal. But because of the relationship, Browning argues, David Newell was not going to withdraw immediately after his appointment; nor was the judge going to recuse himself, or think well of his son's suggestion that he should do so. Browning claims he was in a Catch-22 position and has listed in brief a long litany of alleged omissions by his appointed counsel. It is quite clear that David Newell, by accepting the case, accepted the responsibility to correct any abnormalities in the proceedings that might prejudice his client. Thus, if the fault must be apportioned to anyone in this unusual situation, it must lie with the appointed attorney. We interpret the conflict problem as an issue of ineffective assistance of counsel. We likewise view the waiver arguments as truly an aspect of the ineffective assistance issue. This is because the attorney may have improperly advised Browning to plead guilty.
We are not able to resolve the issue of ineffective assistance of counsel on direct appeal. The record is not adequate. The record discloses no apparent prejudice to Browning as a result of David Newell's representation; in fact, the cure appears to be a simple, voluntary guilty plea. Browning's remedy is through post-conviction relief in the trial court. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Woods, 444 So.2d 1332 (La.App.2d Cir.1984). Since no objections were entered or motions filed before the imposition of sentence, Browning will have to prove actual prejudice to his cause as a result of the conflict. See State v. Marshall, 414 So.2d 684 (La.1982), cert. den. 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982); State v. Kahey, 436 So.2d 475 (La.1983); cf. State v. Ross, 410 So.2d 1388 (La.1982) (Dennis, J. dissenting). The constitutional right of conflict free counsel must balance against reasonable requirements of notice and effective administration. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); State v. Ross, supra.
In denying Browning's appeal on the first five assignments of error, we record the following observations about the conduct of the parties in the court below. We have decided that when a trial judge appoints his own son or daughter to defend an indigent defendant before his own bench, he creates a serious conflict of interest. If the conflict is objected to timely and relief is denied, we will reverse the conviction automatically. Holloway v. Arkansas, supra. In other cases, we will reverse only on a showing, in post-conviction relief, that prejudice resulted from the conflict. Cuyler v. Sullivan, supra. We will presume a conflict. We strongly disapprove of this practice because the potential for abuse and the appearance of impropriety are too great to be tolerated. Neither the district attorney, nor the trial judge, nor defense counsel should have allowed this situation to develop.
*95 Accordingly, we find the arguments advanced in the first five assignments of error to present no issue on appeal.

ASSIGNMENT NO. 6
In his sixth assignment of error, Browning alleges several irregularities concerning the pre-sentence investigation. He first claims he was denied access to the PSI and had never seen it before the trial court passed sentence. He is correct to contend that if the trial court orders a PSI, due process requires that the defendant have the opportunity to traverse any inaccuracies it may contain. State v. Parish, 429 So.2d 442 (La.1983). But the transcript of the sentencing hearing clearly indicates that the PSI was made available to the defendant and that he had no corrections to make. R.p. 50. It is absolutely essential that any complaints about the PSI be made before sentence is actually passed. They cannot be considered for the first time on appeal. State v. Helsley, 457 So.2d 707 (La.App.2d Cir.1984).
Browning next complains that the trial court considered a "pending" felony in passing sentence. He claims the charge in an Alabama state court for bringing stolen property into the state is still awaiting disposition. But the law is settled that the trial court may consider the charge as evidence of criminal activity even if that activity did not result in conviction or arrest. LSA-C.Cr.P. art. 894.1 B(7); State v. Washington, 414 So.2d 313 (La.1982); State v. McKethan, 459 So.2d 72 (La. App.2d Cir.1984). Thus, the argument lacks merit.
Browning finally contends that the trial court erred in referring to him as a fourth felony offender. He says he is only a third felony offender. He urges us to determine whether his 1963 arrest in Uvalde, Texas for "possession of lewd pictures" would amount to a felony. The difference here does not merit our attention; the distinction between a fourth felony offender and a third felony offender is harmless error beyond any doubt, and defense counsel made no effort to correct it. LSA-C.Cr.P. art. 920; State v. Helsley, supra. This assignment lacks merit.

ASSIGNMENT NO. 7
Browning contends that his sentence, though within the statutory limits, is constitutionally excessive. LSA-Const. art. I § 20; State v. Sepulvado, 367 So.2d 762 (La.1979). The trial court must comply with the mandatory guidelines of LSA-C.Cr.P. art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and their factual bases. State v. Jones, 381 So.2d 416 (La.1980). It is axiomatic that the trial court has great discretion in imposing sentences and we will not upset one absent a clear abuse of this wide discretion. State v. Trahan, 425 So.2d 1222 (La.1983).
Browning pled guilty to manufacture of marijuana. This offense bears a maximum sentence of ten years at hard labor and a fine of $15,000. The trial court noted that Browning is an intelligent, 42-year old man who had earned a decent living in the past. He had now turned to growing marijuana and knew exactly what he was doing. The trial court also noted his multiple felony offender status. The hard labor sentence imposed is only sixty percent of the maximum; the fine is exactly one-third. Given all these particulars, we cannot say that the trial court abused its discretion. This assignment lacks merit.

ASSIGNMENT NO. 8
In his final assignment of error, Browning claims he was erroneously charged with an offense not delineated in the criminal code. The bill of information charges him with "manufacture (cultivate) of marijuana"; according to Browning, LSA-R.S. 40:966 never mentions "cultivation" as a punishable offense.
We refer, however, to LSA-R.S. 40:961, which sets out definitions of terms for purposes of controlled dangerous substances law. Subsection 961(21) defines "manufacture" to include "production"; and subsection 961(31) defines "production" to include "cultivation" and "growing." Thus the definitional statute clearly brings Browning's *96 acts under the proscription of section 966. Furthermore, Browning claims no surprise or prejudice because of the bill's word choice. In fact, the guilty plea colloquy shows that Browning was more than adequately informed of the charges against him. See State v. Comeaux, 408 So.2d 1099 (La.1981). This assignment lacks merit.

MOTION TO STRIKE
Finally, Browning argues that the trial court was unauthorized to include in the record a "per curiam" opinion after the judgment passing sentence. He further argues that the per curiam alludes to numerous incidents that are outside the record.
In our deliberation of this case, we did not use the per curiam because of its gratuitous, inessential nature and because it ventured far beyond the record. Since the per curiam played no part in our decision of the case, we will not consider the motion to strike.

CONCLUSION
For the reasons expressed, the judgment and sentence are affirmed.
AFFIRMED.
SEXTON, J., concurs.
NOTES
[1] We distinguish the vintage case of Bonnefoy v. Landry, 4 Rob. 23 (1843), which held that "the relative in whose favor such bias or partiality is supposed to exist will not be permitted to recuse the judge." The court actually concluded that defendant's plea was a groundless, dilatory tactic.
[2] This article's parallel source in the Code of Practice, art. 338, was construed to disqualify the judge without the necessity of a motion. Kemp v. Hayes, 200 La. 505, 8 So.2d 357 (1942). Later, in State v. Lemelle, supra, and State v. LeBlanc, infra, the court held that a judge should recuse himself on his own motion under circumstances where recusation would avoid the appearance of impropriety. We note this only parenthetically because Browning has not assigned as error the judge's failure to recuse himself.