506 So.2d 1288 (1987)
Callie Marie WORLEY, Appellee,
v.
Claytis James THIRDKILL, Appellant.
No. 18624-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
Love, Rigby, Dehan, Love & McDaniel by Truly W. McDaniel, Shreveport, for appellant.
Rankin, Yeldell, Herring & Katz by James E. Yeldell, Bastrop, for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Callie Marie Worley, filed suit against the defendant, Claytis James Thirdkill, alleging that the defendant is the father of her child, Jessica Lynette Worley. The trial court held that the plaintiff proved, by a preponderance of the evidence, that the defendant is the father of the child in question. From this judgment, the defendant appealed. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff filed this paternity suit against the defendant on June 12, 1985 alleging that the defendant is the father of her child, Jessica Lynette, who was born May 5, 1985. The plaintiff alleged that she and the defendant dated each other from January to July, 1984, that they engaged in sexual intercourse and that the defendant is the only person with whom the plaintiff *1289 had sexual intercourse during that period of time.
This case was tried on April 21, 1986. The plaintiff testified that she and the defendant first met around 1976 or 1977, but they did not begin dating until early 1984. The plaintiff testified that from January through July, 1984, she and defendant were seeing each other and they engaged in sex, although not frequently. She claimed that she stopped using any method of birth control after the defendant informed her that he had undergone a vasectomy. In corroboration of her testimony that she and the defendant were dating during 1984, plaintiff presented the testimony of her next door neighbor who testified that she frequently saw the defendant's vehicle at the plaintiff's residence.
Plaintiff testified that she last engaged in sexual intercourse with the defendant on the night of July 20, 1984. She testified that the defendant came to her home that night and they went to bed in plaintiff's bedroom where they remained all night.
The plaintiff also presented the testimony of her female friend, Willie Whaley. The plaintiff and Whaley were planning to leave early on the morning of July 21, 1984 for a vacation in Dallas, Texas. Whaley stayed at plaintiff's residence on the night of July 20, 1984 in order to facilitate those plans. Whaley testified that she entered the plaintiff's bedroom around 4:30 a.m. on July 21, 1984 to awaken the plaintiff. At that time she observed the plaintiff and the defendant in bed together, asleep.
Prior to trial, a blood test was conducted. At trial the defendant consented that the blood test could be introduced into evidence without the necessity of calling the expert who performed the tests. However, the defendant reserved the right to raise other legal objections to admissibility. This blood test showed that there was a 97.3% probability that the defendant was the father of the child.
The defendant denied ever having sexual intercourse with the plaintiff, although he admitted attempting intercourse on one occasion. He also denied ever telling the plaintiff that he had undergone a vasectomy. The defendant claimed that the relationship between the two deteriorated around April, 1984 and he introduced into evidence letters he received from the plaintiff in April and June of 1984, indicating that fact.
The defendant claimed that the plaintiff continued to contact and harass him and that he went to plaintiff's residence on July 20, 1984 to talk about the relationship. The defendant admitted that they talked in the plaintiff's bedroom until the early morning hours, but denied any sexual contact.
The evidence revealed that plaintiff went to Dallas on July 21, 1984 and did not return until sometime in August, 1984. In answers to interrogatories, plaintiff indicated that the approximate time of conception was August, 1984. At trial, the defendant objected to any testimony concerning contact between plaintiff and defendant after July as being outside of the scope of the pleadings.
In an apparent attempt to show that plaintiff engaged in sex with other men, defendant called as a witness Earl Anderson, who admitted being the father of the plaintiff's oldest child, Gina Marie Worley. Anderson testified that he and the plaintiff engaged in sexual intercourse in 1985 following the birth of Jessica Lynette, but denied any sexual contact with the plaintiff during 1984.
The trial court found in favor of the plaintiff, and declared the defendant to be the father of the child in question. In oral reasons for judgment, the court indicated that the blood test and the fact that a credible, independent witness saw the pair in bed together on July 20, 1984 weighed heavily in its decision. Although the court noted that the date of conception was disputed, conception in late July, 1984 was not inconsistent with the child's birth on May 5, 1984.
The defendant appealed the trial court judgment, claiming that the trial court erred in finding that plaintiff proved paternity of the child by a preponderance of the evidence. The defendant also complains *1290 that under LSA-R.S. 9:397, multiple experts are required for an admissible blood test to establish paternity. Further, the defendant argues the trial court erred in allowing, over objection of counsel, proof which expanded the pleadings filed by the plaintiff concerning when conception occurred. We find the defendant's arguments to be meritless.

SUFFICIENCY OF EVIDENCE
The defendant claims the trial court erred in finding that the plaintiff proved, by a preponderance of the evidence, that the defendant is the father of Jessica Lynette Worley.
The burden of proof in a paternity action is set forth in LSA-C.C. Art. 209 which provides, in pertinent part:
A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
To establish a claim by a preponderance of the evidence, taking the evidence as a whole, such proof must show that the fact or cause sought to be proved is more probable than not. IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir. 1982), writs denied 423 So.2d 1149, 1150 (La.1982).
In paternity actions, the determination of whether there has been sufficient proof of descent from an alleged parent is a question of fact. State through Department of Health and Human Resources in the Interest of Brown v. Williams, 471 So.2d 1064 (La.App. 3rd Cir.1985). A factual determination made by a trial court should not be overturned by an appellate court absent a showing that the trial court is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
In his brief, the defendant argues that there were inconsistencies in plaintiff's testimony as to how their relationship began, its constancy and the time of the child's conception. He also argues that plaintiff was having an affair with Earl Anderson, the father of plaintiff's first child, and that the testimony of Willie Whaley was suspect because of her close relationship to the plaintiff. Based upon these factors, the defendant contends the plaintiff failed to establish by a preponderance of the evidence that the defendant is the father of Jessica Lynette Worley.
In the present case, the trial court was convinced from the evidence presented by the plaintiff that the defendant was the father of her child, Jessica Lynette. The court had before it the blood test indicating a high probability that the defendant was the father of the child. There was also testimony from both the plaintiff and the defendant that they dated each other and were together at approximately the time conception took place. These factors were corroborated by a neighbor who frequently observed defendant's vehicle parked at plaintiff's residence and by a friend who observed plaintiff and defendant in bed together at approximately the time conception occurred.
Although there is a dispute over the exact date when conception occurred, such matters cannot be determined with exactitude. The normal human gestation period is from 270 to 290 days and the average time is 280 days. Broughton v. T.S.C. Motors Freight Lines, Inc., 200 La. 421, 8 So.2d 76 (1942); Turner v. Rochelle, 490 So.2d 633 (La.App. 2d Cir.1986). The period of time from the night of July 20-July 21, 1984 to May 5, 1985 is 289 days.
In light of the scientific evidence that the defendant is the father of the child, as well as evidence indicating that plaintiff and defendant engaged in sexual intercourse at the approximate time of conception, together with a lack of evidence that the plaintiff engaged in intercourse with anyone other than the defendant, we cannot say the trial court was clearly wrong in finding the plaintiff showed by a *1291 preponderance of the evidence that the defendant is the father of Jessica Lynette Worley.

BLOOD TESTS
The defendant argues that the trial court erred in admitting into evidence the results of court ordered blood tests conducted to determine the degree of probability of defendant's paternity of the child in question. The defendant claims the blood testing was not conducted according to the procedures required by law and for that reason the results should not have been admitted into evidence. Specifically, the defendant asserts the blood tests were not admissible because there was a single blood test conducted by a lone expert rather than by multiple experts. Defendant contends that multiple experts were required by LSA-R.S. 9:397 and the interpretation of that statute found in McGowan v. Poche, 393 So.2d 278 (La.App. 1st Cir.1980).
In McGowan, the plaintiff filed suit to establish that the defendant was the father of her child. The court appointed a lone expert to conduct blood tests on plaintiff, defendant and the child. The expert filed with the court an affidavit stating the defendant was not the father of the child. The defendant then filed a motion for summary judgment which was granted by the trial court. The plaintiff appealed, asserting that summary judgment was not a proper procedural device. The appellate court agreed and then concluded, in dicta, that LSA-R.S. 9:397 required the appointment of more than one expert to conduct the blood tests. The defendant in the present case relies heavily on McGowan to support his contention that the results of blood testing conducted by a lone expert are inadmissible. However, McGowan was decided prior to the 1985 amendment to LSA-R.S. 9:397 and therefore does not support defendant's position in the present case.
LSA-R.S. 9:397 was amended by Acts 1985, No. 38, § 1, and became effective September 6, 1985.[1] In the instant case, on November 8, 1985 the trial court ordered that the plaintiff, defendant and the child furnish blood samples for examination by Linda Armstrong, an expert from the North Delta Crime Laboratory. This blood test was ordered pursuant to LSA-R.S. 9:397, which now provides:
The tests shall be conducted by a court appointed expert or experts qualified as examiners of blood samples for inherited characteristics, including but not limited to blood and tissue type. The number and qualifications of such expert or experts shall be determined by the court.
This statute clearly states that a court may appoint in its discretion any number of experts, including one, to conduct the blood testing.[2] Therefore, in this case, the trial court did not err in admitting into evidence the results of blood testing conducted by a single expert.

EXPANSION OF PLEADINGS
The defendant asserts that the trial court erred in allowing, over objection, proof which expands plaintiff's pleadings. However, defendant admits in brief that this specification of error has been raised out of *1292 an abundance of caution and that the trial court ruling on this issue actually appears to be correct.
In plaintiff's petition, she alleged that she and the defendant were involved with each other from January through July, 1984. In interrogatories propounded by the defendant to the plaintiff, the plaintiff answered that the child in question was conceived in August, 1984.
At trial, when defense counsel questioned the plaintiff on cross examination regarding the interrogatory, the plaintiff indicated that her doctor told her conception occurred around August 7, 1984. On redirect examination, the plaintiff's counsel attempted to question her about any further contact she may have had with the defendant after July, 1984. At that point, defense counsel objected. The objection was sustained. The trial court ruled that the plaintiff was bound by her pleadings and could not testify regarding contact with the defendant after July, 1984.
At the close of plaintiff's case, the defense moved for a directed verdict on the grounds that the plaintiff failed to show that she and the defendant engaged in intercourse in August, 1984, when the child was conceived. The trial court denied the motion and indicated that the pleadings were expanded when the plaintiff read into the record her answers to interrogatories concerning the date of conception. After some discussion, the court clarified its ruling regarding the denial of defendant's motion for a directed verdict. The trial court then stated that even if the last act of sexual intercourse between plaintiff and defendant occurred on July 20, 1984, the child could have had a birth date of May 5, 1985. We find no error in the trial court's ruling, as clarified.
The trial court was correct in ruling that any evidence concerning relations between the plaintiff and defendant after July, 1984, was beyond the scope of the pleadings. No evidence was admitted to enlarge the pleadings. The court was correct in refusing to allow the questions to the plaintiff concerning her involvement with the defendant after the time period specified in the pleadings.
Because no evidence was introduced by the plaintiff which enlarged the pleadings, the defendant was not prejudiced. The basis of the trial court's denial of defendant's motion for a directed verdict was founded, not on any expansion of the pleadings, but upon properly admissible evidence which indicated a very real probability that the defendant is the father of this child. Therefore, we find no error in the action by the trial court.

CONCLUSION
For the above stated reasons, the judgment of the trial court finding the defendant, Claytis James Thirdkill, to be the father of Jessica Lynette Worley, is affirmed, at appellant's cost.
AFFIRMED.
NOTES
[1] That statute had previously provided:

The tests shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts qualified as examiners of blood types, perform independent tests under order of court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court.
[2] The language of the statute applicable to this case is clear that, if the court so chooses, the appointment of only one expert is proper. However, even prior to the amendment to the statute, the jurisprudence indicated the appointment of a single expert did not affect the admissibility of the blood test. See State Through Department of Health v. Smith, 459 So.2d 146 (La.App. 2d Cir.1984); Bailey v. Douglas, 478 So.2d 172 (La.App. 3rd Cir.1985) writ denied 479 So.2d 365 (La. 1985) and Ellis v. Hicks, 485 So.2d 1003 (La.App. 4th Cir.1986). In addition, Bailey v. Douglas, supra, held the amendment to LSA-R.S. 9:397 to be procedural and, therefore, retroactive.