15 So.3d 1252 (2009)
STATE of Louisiana, Appellee,
v.
Edmund Ray STANDFILL, Appellant.
No. 44,407-KA.
Court of Appeal of Louisiana, Second Circuit.
July 1, 2009.
*1254 Malone Law Firm by Mary Ellen Winchell, for Appellant.
J. Schuyler Marvin, District Attorney, John Michael Lawrence, Charles A. Smith, Dale Newton Montgomery, II, Assistant District Attorneys, for Appellee.
Before BROWN, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, where a jury convicted the defendant, Edmund Ray Stanfill,[1] of simple cruelty to an animal, a violation of La. R.S. 14:102.1(A)(1)(I). Stanfill was sentenced to six months' jail time. The sentence was suspended, and Stanfill was placed on two years active probation with special conditions including 180 eight-hour days of community service to be performed at the Bossier Animal Control Center. Stanfill was also ordered to pay $1,000.00 restitution to the victims. For the following reasons we affirm the conviction; however, the sentence is vacated in part, amended in part, and as amended affirmed.

FACTS
The defendant, Stanfill, was in his backyard, in Haughton, Louisiana, on the morning of March 12, 2008, when he realized the neighbor's pit bull was in his yard. Stanfill told the dog to "go home" and the dog retreated over the four-foot chain link fence that separated his neighbor's property from his. Stanfill watched as the dog ran around the neighbor's yard for a few seconds before charging up to the fence again. Stanfill shot the dog, claiming he believed it was going to jump the fence again and that he feared for his safety. After shooting the pit bull, Stanfill called the sheriff's department. The incident was investigated, and Stanfill was charged with aggravated cruelty to an animal.
After a jury trial, Stanfill was convicted of the lesser charge of simple cruelty to animals, a misdemeanor. Stanfill was sentenced to six months' jail time. The sentence was suspended and Stanfill was placed on two years' active probation with special conditions including 180 eight-hour days of community service to be performed at the Bossier Animal Control Center. Stanfill was also ordered to pay $1,000 restitution to the victims. A timely filed motion to reconsider was denied, and the instant appeal followed.

Trial Testimony
At trial, the neighbor and dog's owner, Shana Burke, testified that she was at home on March 12, 2008, preparing to shower when she heard a gunshot. Shana opened the door and called to her pit bull, Gage, but the dog did not respond. She went into the yard where she saw the dog lying near the fence. Shana testified that Gage had never jumped the fence. Shana also stated that Gage would bark while in *1255 the backyard but he had not bitten anyone. According to Shana, she was sitting with the dead dog, when Stanfill came to the fence and told her, "Sorry, I had to shoot your dog."
Shana's husband, Britt Anthony Burke, testified he had Gage for approximately seven years, and the dog was an unregistered pit bull. Britt explained that he had gone to work when his wife called to tell him Gage had been shot. Britt stated that Stanfill had complained, in the past, about Gage's barking so they shortened the amount of time Gage would spend outside. Britt also stated that he had never seen Gage jump a fence so that had never been a concern.
The Burkes' 22-year-old son, Kenny, testified he was at home sleeping on the morning of the shooting and awoke to the sound of his mother screaming "He's dead. He's dead." Kenny went to the backyard and found Gage in a pool of blood. Kenny recalled Stanfill being near the fence and saying, "Sorry, I shot your dog."
Deputy David Reynolds of the Bossier Parish Sheriff's Office testified that he was dispatched to Stanfill's home after Stanfill called in to report that a dog had been shot. While on the scene, Reynolds received another call to go to the Burkes' residence. Reynolds testified that as he was listening to Stanfill recount the details leading up to the shooting, he noticed a spent shotgun shell and a coffee cup on the grass. The shell casing was about 8 to 10 feet from the fence.
Brenda Stanfill, the defendant's wife, testified she had been living next door to the Burkes for approximately five years. According to her, they were friendly with the neighbors and had no issues with their three other dogsonly the pit bull. Brenda testified that she and her husband even gave a graduation gift to the neighbor's son. Brenda testified she would garden in her backyard but her activities would be interrupted by Gage, "barking, growling, jumping, clawing up the dirt.... [I]t just seemed like it was getting more and more aggressive." Brenda stated she was afraid of the dog.
Brenda recalled that, on the day of the incident, she was in her kitchen getting coffee when her husband came in and told her he was going to shoot the snake he had seen near their chicken coop early that morning. Shortly thereafter, Brenda heard a noise and Stanfill returned to the house, telling her to call the sheriff's department because he shot the Burkes' dog. Brenda called the sheriff and waited in the house while Stanfill stood outside in their backyard.
Stanfill testified on his own behalf. Stanfill, who was retired at the time of the shooting, discussed his previous employment. He was a professor of criminal justice at Bossier Parish Community College for 18 years. Prior to this, he served as a probation officer and is a retired Air Force officer. Stanfill explained that because of the dog's increasingly aggressive behavior, Stanfill made a video of some of the dog's actions in November 2007. His wife, at trial, testified that the dog had become more aggressive since this video was taken. Stanfill explained he made about a dozen complaints to Britt about the dog's behavior. Stanfill testified that Britt would tell him that the dog was harmless, well trained, and would never jump the fence. Stanfill stated he was afraid that one day the dog would jump the fence since he was well trained and a big dog; however, he had never seen him do so before the day of the shooting.
Stanfill testified he had a shotgun that he used to kill snakes on his property, and he had the gun with him the morning the dog was shot. When Stanfill walked toward his chicken coop, the dog started barking at him. Stanfill recalled taking a *1256 few more steps then hearing the fence rattle. When he turned, Stanfill saw the dog now standing in his yard. Stanfill said he told the dog to "go home." The dog jumped back into the neighbor's yard. The dog then ran to the middle of its own yard before turning back toward Stanfill. Stanfill stated he saw the dog's eyes turn red and the dog moved towards the fence again. He aimed at the dog's collar and shot the dog. The dog dropped to the ground, and Stanfill put another shell in the shotgun, waiting to see what would happen. When the dog did not move, Stanfill testified he went into his house, told his wife to call the sheriff's office, then went back outside to await the arrival of the sheriff's deputy. Stanfill testified he did not believe he could have outrun the dog and there was no doubt in his mind that the dog was going to jump the fence again.

LAW AND DISCUSSION

Sufficiency of the Evidence
In his first assignment of error, Stanfill argues that there was insufficient evidence to support a jury verdict of simple cruelty to an animal beyond a reasonable doubt, specifically in that he was justified in shooting the animal since it was aggressive in the past and acted aggressively toward him on the morning of the shooting.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, XXXX-XXXX (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App.2d Cir.01/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758, writ denied, XXXX-XXXX (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La. App.2d Cir.01/14/09), 2 So.3d 582; State v. Parker, 42,311 (La.App.2d Cir.08/15/07), 963 So.2d 497.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La. App.2d Cir.01/14/09), 2 So.3d 582; State v. *1257 Allen, 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.02/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.01/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/09/06), 941 So.2d 35.
The state must show that Stanfill mistreated "any living animal by any act or omission whereby unnecessary or unjustifiable physical pain, suffering, or death is caused to or permitted upon the animal." La. R.S. 14:102.1(A)(1)(I). State v. Muneer, 1998-663 (La.App. 5th Cir.01/13/99), 733 So.2d 26.
In the instant case, primarily through Stanfill's testimony, the state was able to show that he shot the pit bull while it was in the neighbor's yard. Though Stanfill testified that he was scared for his life, the jury chose not to believe his explanation that he killed the dog in self-defense. Stanfill testified that the animal was not in his yard. Furthermore, several people testified that they had never seen the dog jump the fenceincluding Stanfillexcept for the morning of the shooting. In addition, the record is clear that there had been an ongoing issue with the neighbors concerning the pit bull's general demeanor. Considering the fact that the dog returned to his own yard when told to do so by Stanfill, as well as the fact that the dog had not physically attacked Stanfill in the past, it was not unreasonable for the jury to conclude that Stanfill mistreated Gage by shooting him and causing his death. However, the jury did not find Stanfill's action to be so egregious to justify an aggravated cruelty charge, and instead found him guilty of a lesser responsive verdictsimple cruelty to an animal. This assignment of error is therefore without merit.

Community Service
In his second assignment of error, Stanfill states that the trial court imposed an excessive amount of community service. Stanfill states that the community service imposed is in excess of that set forth in the sentencing provisions of La. R.S. 14:102.1 and given his current living situation creates an undue hardship for him. However, the state contends that the trial court imposed an appropriate sentence considering the facts of the case and Stanfill's personal history.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.01/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
The trial court is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7; State v. Thompson, XXXX-XXXX *1258 (La.04/09/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App.2d Cir.01/26/05), 892 So.2d 710. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
Louisiana R.S. 14:102.1(A) provides in pertinent part:
(2)(a) Whoever commits the crime of simple cruelty to animals shall be fined not more than one thousand dollars, or imprisoned for not more than six months, or both.
(b) In addition to any other penalty imposed, a person who commits the crime of cruelty to animals shall be ordered to perform five eight-hour days of court-approved community service. The community service requirement shall not be suspended.
Louisiana C. Cr. P. art. 895 Conditions of probation provides, in part,
A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
(7) Make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court; (11) Perform community service work.
We find the 180 eight-hour days of community service excessive given the jury's finding of simple cruelty to an animal. While we do not make light of the loss suffered by the Burkes, the sentence is disproportionate to the crime. Considering Stanfill's background as a retired probation officer and a professor, the fact that he called the police after he shot the pit bull, and the life changes he has had to make since the incident, we find the trial court abused its discretion in its sentence.
We recognize that the Stanfills have had to move to east Texas for fear of retaliation from the local population arising from this incident. Furthermore, the animal shelter in east Texas denied his request to work there leaving Stanfill with no alternative but to drive to and from Bossier City, Louisiana. We also take into consideration that Stanfill is 65 years old and was once retired but now must work due to the various costs associated with this incident. The 1,440 hours of community service prevents him from making a living and has created an undue hardship.
Louisiana R.S. 14:102.1 provides guidance as to what the legislature deemed appropriate as punishment for cruelty to animals. The only mandatory portion of the statute is that Stanfill must complete five eight-hour days of community service, the rest is discretionary. Clearly, there is a vast discrepancy between the five days of community service the specific statute governing cruelty to an animal provides and the 180 days the trial court issued. While the trial court has discretion under La. C. Cr. P. art. 895, we find the trial court abused its discretion given the facts of this case. We therefore, amend the sentence to impose only the mandatory five eight-hour days of court-approved community service set forth in La. R.S.14:102.1(A)(2)(b) to be completed at the Bossier Animal Control Center. We vacate the rest of the sentence, specifically the six months' suspended sentence and two years' active probation with special conditions including 180 eight-hour days of community service to be performed at the Bossier Animal Control Center.

"Reparation Payment"
In his third assignment of error Stanfill argues that the "reparation payment" ordered by the trial court is excessive *1259 in that it exceeds the actual reasonable losses incurred by the victims. We agree. Here the trial court stated that Stanfill would have to:
[P]ay the sum of $1,000 to the victims, that's I'm going to refer to that as reparation payment. That's pursuant to article 895. That is to be paid within 90 days. Now that simply is an amount that I have chosen. I'm not pretending to suggest that this in any way would satisfy or constitute full restitution to the victims. It's my understanding that there is perhaps some civil action that is pending so that willwhat ever [sic] course or what ever [sic] outcome of that matter that's between the parties.
Louisiana C. Cr. P. art. 895 and 895.1 provides, as an additional condition of probation, that the defendant may be ordered to make reasonable reparation or restitution to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court. Specifically 895.1 provides, in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
(Emphasis added.)
Because the monetary amount is to be a reasonable sum not to exceed pecuniary loss, we find the trial court erred in its imposition of a $1,000.00 fine. The $1,000.00 is not a reparation but rather punitive in nature, noting the trial court's reference to emotional loss. Further, there was no evidence as to how much the actual loss was and instead the trial court, as indicated above, simply chose an amount. Considering there is a civil mechanism to compensate the Burkes, we vacate the "reparation" of $1,000.00 imposed by the trial court. We pretermit discussion on the failure to inform Stanfill the right to have a judicial determination of the amount of restitution in light of our findings.[2]

CONCLUSION
For the foregoing reasons, Edmund Ray Stanfill's conviction is affirmed. We vacate *1260 the sentence and impose only the five days community service mandated by La. R.S.14:102.1(A)(2)(b).
CONVICTION AFFIRMED; SENTENCE VACATED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
CARAWAY, J., concurring in part and dissenting in part with written reasons.
CARAWAY, J., concurring in part and dissenting in part.
I concur in the majority affirmation of the conviction and the ruling on the reparation payment. I dissent from the ruling regarding the sentencing. The trial court's 180-day community service sentence in this case has a harsh effect similar to a six-month jail sentence which is the maximum punishment for this misdemeanor offense. A maximum sentence should not have been imposed on this first offender. Nevertheless, I would remand the matter to the trial court for resentencing within certain parameters that would allow for a sentence in proportion to the crime and in keeping with the background of this first offender.
NOTES
[1] The defendant testified his name is spelled "Stanfill"; however the record, specifically the Bill of Information, contains the spelling "Standfill." The state orally amended the spelling of the defendant's name on the bill of information, during the trial, without defense objection.
[2] Louisiana C. Cr. P. art. 895.1(A)(2)(a) provides, in pertinent part:

The order to pay restitution together with any order to pay costs or fines, as provided in this Article, is deemed a civil money judgment in favor of the person to whom restitution, costs, or fines is owed, if the defendant is informed of his right to have a judicial determination of the amount and is provided with a hearing, waived a hearing, or stipulated to the amount of the restitution, cost, or fine ordered. In addition to proceedings had by the court which orders the restitution, cost, or fine, the judgment may be enforced in the same manner as a money judgment in a civil case. Likewise, the judgment may be filed as a lien as provided by law for judgment creditors. Prior to the enforcement of the restitution order, or order for costs or fines, the defendant shall be notified of his right to have a judicial determination of the amount of restitution, cost, or fine. Such notice shall be served personally by the district attorney's office of the respective judicial district in which the restitution, cost, or fine is ordered. (Emphasis added.)