STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-422


STATE OF LOUISIANA

VERSUS

BRENDA LANGLINAIS


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 07-2426
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.

AFFIRMED IN PART, AMENDED IN PART.


Mary Constance Hanes
Residential Address
450 Lowerline Street
New Orleans, LA 70118
(504) 866-6652
Counsel for Defendant/Appellant:
Brenda Langlinais

Hon. J. Phillip Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
Counsel for Plaintiff/Appellee:
State of Louisiana

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

On August 3, 2007, agents with the Iberia Parish Sheriff's Department received information that a large quantity of narcotics was located at a residence occupied by the Defendant, Brenda Langlinais. The homeowner, the Defendant's sister, consented to a search of the residence. During the search, agents witnessed the Defendant pick up an object on a nightstand and place it in the waistband of her pants. The object, a black plastic container, housed ten grams of crack cocaine, six large and nine small rocks. Also, approximately 590 tablets of Lortab (dihydrocodeinone) were seized in the search and neither the Defendant nor her sister, had a legitimate prescription for the medication.

On December 5, 2007, the Defendant was charged by bill of information as follows: count one - possession with intent to distribute a schedule III controlled dangerous substance, dihydrocodeinone, a violation of La.R.S. 40:968(A)(1); count two - possession with intent to distribute a schedule II controlled dangerous substance, cocaine, a violation of La.R.S. 40:967(A)(1); and, count three– possession of a firearm while in possession of dihydrocodeinone and cocaine, a violation of La.R.S. 14:95(E). Pursuant to a plea agreement, the Defendant entered a plea of no contest to counts one and two, and the remaining count was dismissed.

The Defendant was sentenced on June 25, 2008, to serve five years on count one, and to ten years on count two, with five years suspended. The sentences were ordered to run concurrently. The trial court also ordered five years of supervised probation upon the Defendant's release, along with special conditions of probation. The special conditions of probation are as follows:

> 1) Report to the probation office within twenty-four (24) hours of release;

2) report monthly and pay a $56.00 monthly supervision fee;

3) on the charge of Possession With Intent to Distribute Cocaine, pay a fine of $2,000.00 and on the charge of Possession with Intent to Distribute Dihydrocodeinone, pay a fine of $2,000.00; also pay cost of court; Fine and court cost is to be paid within two (2) years;

4) pay the cost of prosecution in the amount of $100.00 within two (2) years of signing up;

5) reimburse the Indigent Defender Board $500.00 for services rendered to be paid within two (2) years;

6) pay $500.00 for each charge to the 16th Judicial Acadiana Crime Lab Fund within three (3) years;

7) pay $100.00 to the Clerk of Court to defray the filing cost within sixty (60) days of signing up;

8) perform 100 eight (8) hour days of community service;

9) within seven (7) days of signing up, attend, pay for and successfully complete an approved substance abuse program and evaluation and follow any recommendation for treatment;

10) remain drug and alcohol free; stay out of bars, casinos and away from illicit drug and substance abusers;

11) attend five (5) AA or NA meetings a week while on probation;

12) medical condition is to be taken care of at Department of Corrections Facility

A motion to reconsider the Defendant's sentences was filed by her public defender on July 22, 2008, and denied on July 25, 2008. A subsequent motion to reconsider was filed by private counsel on July 23, 2008, and denied as moot on July 28, 2008.

The Defendant is now before this court on appeal, asserting that her sentences and the fines and special conditions of probation are excessive.

**ASSIGNMENT OF ERROR:**

The sentence of five (5) years for possession with intent to distribute dihydrocodeinone (count one) and ten (10) years, with all but five (5) years suspended, for possession with intent to distribute cocaine (count two), and the fines and numerous special conditions of probation are excessive under the circumstances of this case.

**DISCUSSION OF APPLICABLE LAW:**

In her sole assignment of error, the Defendant agues that her sentences and the fines and special conditions of probation are excessive. This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 [p.5] (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 [p. 3] (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense

committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The maximum possible sentence for possession with intent to distribute dihydrocodeinone is ten years at hard labor and a fine of not more than $15,000.00. La.R.S. 40:968(B). As such, the Defendant received one-half of the maximum possible sentence and her fine of $2,000.00 was significantly less than the maximum possible fine.

The sentencing range for possession with intent to distribute cocaine is two to thirty years at hard labor, the first two years to be served without benefit of parole, probation or suspension of sentence, and a fine of not more than $50,000.00. La.R.S. 40:967(B)(4)(b). The Defendant's ten-year sentence is one-third of the maximum possible sentence, and her $2,000.00 fine is a fraction of the maximum possible fine. Additionally, half of the Defendant's ten-year sentence was suspended, further reducing the amount of time she must serve.

Lastly, the benefit received from the Defendant's plea bargain was significant. Prior to her plea, the Defendant faced an additional hard-labor sentence of five to ten years, without benefit of probation, parole, or suspension of sentence, and a fine of not more than ten thousand dollars. La.R.S. 14:95(E).

At sentencing, the Defendant confirmed that she has been under continuous medical care since 1979. She also described her medical condition, stating that she had back surgery in 1979 and neck surgery in 1984. As a result, she suffers from

chronic pain and had been under the treatment of Dr. Steven Staires for 3 weeks for pain management. When she began treatment under Dr. Staires, he reduced the large amount of pain medication that she had been taking for two years with the use of methadone. According to the Defendant, she could function but was still in pain. She also explained that she has a hammer toe and wears only a certain type of shoe. The Defendant testified that she has had ten heart stents and one renal stent and was due to return to her doctor in July. With regard to work, the Defendant stated that she was sitting with an elderly woman, but that the job was hard now because she was no longer taking pain medication.

In reaching its decision, the trial court stated that it considered the following:

I did read in preparation for your sentencing a letter from Dr. Hebert who speaks very well of you and the care that you gave his ninety-five year old mother that they had not been able to get before that. They speak very well of you and I take that into consideration.

I also take into consideration ... your medical conditions that you assert. They're not very different from my medical conditions. I too had back surgery, major back surgery in the nineties and I too am in chronic pain. I just have to decide that I have to go forward. Everybody has some kind of pain. I see a long list of medications listed by Dr. Stine. The Toprol, a lot of people take Toprol. The aspirin, a lot of people take aspirin. There are lots of things that are here that's just for regular functioning. Ms. Nancy says you're elderly. She'd better be careful. You're fifty-one years old. You'll be fifty-one in September. So there are lots of things here for stomach upset and all those things that can be caused by the amount of medications that you're taking that are prescribed, and the amount of medications that you're taking that are not prescribed.

In addition to that, in order to care for a ninety year old lady, I have no doubt, ma'am, that you have to exert energy. They're a dead weight and I think that's a medical term. You have to move the, you have to lift them. There are things that you have to do that do not indicate to me that you're incapable. You've for years lived as someone who couldn't work, and that's okay. I just don't have that luxury. I also have to take into consideration the fact that you are a first time felony offender, and I tell the kids, though, the young kids sometimes, you picked a doozy for your first time, and you are a first time felony

offender and I am going to keep that in consideration, but quite often and regularly in this courtroom young men and particularly young African American men go to jail for having a lot less dope. I'm not saying that that is bad. Selling dope is selling dope. But you have a large amount of crack cocaine, a large amount of Lortabs, and a gun. And you've already received the benefit of the gun charge being dismissed.

. . . .

I understand your medical condition, but it's not anything that cannot be taken care of by the Department of Corrections. Know that all my sentences reflect mercy. I will not throw you away just like I don't throw the young people away. You are here, there's some consequences to your behavior, and notwithstanding your medical conditions, . . .

. . . .

Let me make it clear to you, Ms. Langlinais, I think you do have some medical problems, but I think you've used that as a reason to develop the drug problem. And therefore you're no different than Mr. Ted Antoine who sat up there earlier today. He has a drug problem, he just didn't have prescription drugs. A drug problem is a drug problem is a drug problem. I think you have a drug problem and you need to deal with it.

I'm not going to say maintain gainful employment. I think the community service can be done in connection with the disabilities. As the record is clear that you have worked in a service industry that requires you to be able to do some physical exertion. In addition to that, the information from Dr. Steve Stine tells me all of your medical conditions are under control. You do not experience chest pains on physical exertion and you're not experiencing shortness of breath other than brought on by your stress. These are stressful times. I understand that.

The trial court also stressed that it could have ordered consecutive sentences and was under no obligation to run them concurrently. The trial court then stated:

In addition to that, young kids sometimes do what I call stupid points, because they're young and stupid. We all were. You're past that. Those people who know better should do better. Those people who hold themselves out as being responsible are held to a different level. I didn't create that. Your sentence is consistent with my sentencing style.

-6-

The letter from Dr. J. R. Hebert to which the court referred at sentencing reflects that in addition to his praise of the Defendant's caregiving to his elderly mother, he indicates that he did not condone the Defendant's actions. Dr. Hebert, nonetheless, requested that the trial court consider an alternative to jail time in sentencing her. He explained that the Defendant "brought about a renewed spirit and value of life" to his ninety-five-year-old mother who had been confined to a wheelchair for several years. Dr. Hebert described the Defendant as "not only a caregiver, but a valued and trusted friend" to his mother.

The Defendant's medical evaluation by Dr. Jonathan H. Stine, upon which the trial court relied in sentencing, was also reviewed. Although the trial court was correct in stating that the Defendant's medical conditions were under control per Dr. Stine's conclusion, a review of Dr. Stine's evaluation provides a more accurate and thorough summary of the Defendant's health problems than that which was stated by the trial court at sentencing. First, Dr. Stine, the Defendant's cardiologist, identified the Defendant's multiple diagnoses, which included coronary artery disease, renal artery disease, congestive heart failure, hypertension, hyperlipidemia and chronic hepatitis B infection. The Defendant was taking thirteen medications for the maintenance of these problems, eleven of which were prescription medications. Her medical history included the placement of numerous coronary artery stents and a renal artery stent. The trial court correctly stated, however, that Dr. Stine reported that the Defendant's medical conditions were either stable or well-controlled.

On appeal, the Defendant stresses that although the sentences and fines are within the respective sentencing ranges, they are, nonetheless, excessive, considering her age and the fact that this was her first conviction of any kind. In addition to her

health problems as discussed above, the Defendant asserts that her only income is from disability payments, supplemented with income from caring for an elderly woman.

With regard to the fines and special conditions of probation, the Defendant asserts that they are onerous and destine her for failure. The fines and fees the Defendant will be expected to pay during her first two years of probation total $6,200.00: $2,000.00 in fines for each conviction, $500.00 for costs of prosecution, $500.00 to the Indigent Defender Board, and $1,200.00 for twenty-four months of supervised probation fees. In her third year of probation, the Defendant will be expected to pay a total of $1,600.00: $500.00 to the Acadiana Crime Lab Fund for each conviction and $600.00 for twelve months of supervised probation fees. The Defendant contends that these sums of money are beyond what she can reasonably be expected to pay, considering she relies on disability income and her limited ability to earn additional money.

The Defendant also points to the trial court's recognition at sentencing that she is unlikely to earn much from working and that the court was not going to require her to maintain gainful employment. As such, the Defendant maintains that it makes little sense to impose fines and fees which she is unable to pay, especially the fines that are not mandatory. Additionally, the trial court ordered the Defendant to perform one hundred eight-hour days of community service and to attend five AA or NA meetings a week during her probationary period, further reducing her ability to supplement her disability income.

This court finds significance in the mitigating factors present in this case—most notably that the Defendant is a first time offender, that she is in poor

health, and that she is over fifty years of age. However, we are also vigilantly aware of, and hold great respect for, the wide discretion owed to the trial court in imposing a sentence. We find that the trial court was measured and deliberate in handing out a relatively lenient sentence for such a serious offense. With regard to the length of the sentence, while we are mindful of the Defendant's condition and health, we cannot say that the trial court exhibited a manifest abuse of discretion in handing down this sentence, considering the much harsher penalty it could have imposed.

We are greatly concerned, however, with the severe special conditions of probation that accompany the sentence. We note that the primary purpose of probation is the rehabilitation of the defendant through reintegration into society. *State v. Clark*, 391 So.2d 1174 (La.1980). We find it difficult to see how such rehabilitation would be possible when the Defendant will be placed under such a heavy financial burden.

In *State v. Hall*, 99-2887 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, the defendant pled guilty to possession of cocaine and was sentenced to three years at hard labor, suspended, and three years of probation with ten special conditions of probation at a total cost of $1,300.00 plus a $20 per month probation fee. On appeal, the Defendant argued that the conditions of probation were financially excessive. The court found, however, that the defendant, a twenty-eight-year-old able-bodied male, was gainfully employed in the construction industry, and thus, failed to show that the conditions of probation were financially excessive. In reaching its decision, the court stated:

> The purpose of probation is the promotion of a defendant's rehabilitation by allowing him to reintegrate into society without confinement. *State v. Clark*, 391 So.2d 1174, 1177 (La.1980); *State v. Davis*, 375 So.2d 69, 73 (La.1979). "It holds no promise and serves no

-9-

purpose if the conditions are so harsh that the probationer is destined for failure at the outset." *State v. Carey*, 392 So.2d 443, 444 (La.1981). This includes financial conditions. *See Carey*; *State v. Sartain*, 571 So.2d 192 (La.App. 4 Cir.1990). Such excessively harsh financial conditions of probation will be stricken by appellate courts. *Carey*; *Sartain*.

*Id*. at 59.

In *State v. Parker*, 423 So.2d 1121, 1124 (La.1982), the supreme court stated:

In the past, we have consistently afforded the trial judge a wide latitude in the imposition of probationary conditions, as long as the conditions are reasonably related to the rehabilitation of the individual and do not constitute excessive, cruel, or unusual punishment. La. Const. art. 1, sec. 20; La.C.Cr.P. arts. 894, 894.1; *State v. Morgan*, 389 So.2d 364 (La.1980); *State v. Davis*, 375 So.2d 69 (La.1979); *State v. Credeur*, 328 So.2d 59 (La.1976). This discretion is not without its bounds, however. We cannot countenance the imposition of sentences under conditions which heap an unjust burden upon the generally impecunious criminal defendant.

Considering same, the court found that the $200.00 per month payment to the criminological fund as a condition of probation was not reasonably related to the defendant's rehabilitation. The court noted that the defendant was already burdened with fixed expenses, consuming an appreciable portion of his disposable income. The court found significant the fact that the defendant was the sole support of his elderly mother and that he had some difficulty in paying $150.00 per month in child support.

These cases are on point with the matter before us and reflect our grave concern on the issue of the excessive burden placed by the special conditions of probation. The Defendant's health problems, coupled with her already limited income, make it unrealistic for the court to expect her to be capable of meeting these conditions. Accordingly, we find that the special conditions are excessive considering the jurisprudence and the circumstances surrounding this case.

Pursuant to La.Code Crim.P. art. 882, an appellate court can correct an illegal

-10-

sentence at any time. An appellate court may not correct an illegal sentence if that correction involves the exercise of sentencing discretion. *State v. Curtis*, 08-99 (La.App. 3 Cir. 6/5/08), 987 So.2d 294. We note, however, the multiple cases wherein certain aspects of a sentence have been vacated in lieu of remanding the matter back to the trial court for resentencing. First, there is a line of cases involving default prison time for failure to pay a fine and/or costs. The second circuit in *State v. Helsley*, 457 So.2d 707 (La.App. 2 Cir. 1984), vacated the portion of the defendant's sentence involving the fine and costs rather than remanding the case to the trial court for resentencing. In reaching its decision, the court stated:

> If a defendant is indigent, the trial court may not impose a maximum sentence of imprisonment and a fine which will cause him to be imprisoned beyond the maximum duration fixed by statute when he is unable to pay a fine. *State v. Williams, supra* [288 So.2d 319 (La.1974)]. The imposition of the fine and costs in addition to the maximum term of imprisonment is excessive in this case because the defendant is an indigent whose financial situation is unlikely to substantially improve during the extended period of imprisonment which he is facing; thus, he will be forced to serve a longer term of imprisonment than that statutorily imposed because of his impecunious condition.

*Id*. at 721.

After the *Helsley* decision, the Fourth Circuit addressed the discriminatory aspect of imposing a fine on an indigent defendant in *State v. Williams*, 489 So.2d 286, 291-92 (La.App. 4 Cir. 1986). The specific issue addressed by the court was whether imposing a fine on an indigent defendant and then automatically converting the fine into an additional prison term violated the Due Process and Equal Protection Clauses of the United States and Louisiana Constitutions.

> To determine whether the different treatment for an indigent violates the Equal Protection clause, we must decide whether and under what circumstances a defendant's indigent status may be considered in imposing a fine which can result in additional time. This is substantially

similar to asking the due process question of whether and when it is fundamentally unfair to impose such a fine which converts into additional prison time when an indigent is totally unable to pay. See *Bearden v. Georgia*, 103 S.Ct. at 2069, n. 8.

The state has a fundamental interest in appropriately punishing individuals who break criminal laws whether the persons are rich or poor. Sentencing judges are vested with wide discretion in determining the initial punishment in a particular case and consider many factors including the defendant's financial condition. *Bearden v. Georgia*, 103 S.Ct. at 2071.

The state's penological interests are served here by imposition of the predicate prison term. The objective of imposing a fine in addition to the sentence relates to augmenting the state's revenues, but that purpose cannot be served when the indigent defendant cannot pay the fine and the additional imprisonment saddles the state with the cost of housing and feeding him for an additional six months. See *Tate v. Short*, 401 U.S. at 399, 91 S.Ct. at 671.

Louisiana courts have consistently held that an indigent may not be given a fine in default of which a prison term is imposed in excess of the statutory maximum. *State v. Williams*, 288 So.2d at 319; *State v. Williams*, 480 So.2d 432 (La.App. 4th Cir.1985), *writ granted*, 484 So.2d 662 (La.1986); *State v. Turner*, 480 So.2d 404 (La.App. 4th Cir.1985); *State v. Helsley*, 457 So.2d 707 (La.App.2d Cir.1984); *State v. Plaisance*, 444 So.2d 665 (La.App. 1st Cir.1983); *State v. Young*, 432 So.2d 1012 (La.App. 1st Cir.1983).

The rule of *Williams*, *Tate* and *Bearden* is that the state cannot impose a fine as a sentence and then automatically convert it into a prison term solely because the defendant is indigent and cannot pay the fine regardless of whether the aggregate sentence exceeds the statutory maximum. *State v. White*, 476 So.2d 1162 (La.App. 3rd Cir.1985); *State v. Perry*, 472 So.2d 344 (La.App. 3rd Cir.1985); *State v. LaGrange*, 471 So.2d 1186 (La.App. 3rd Cir.1985). Cf. *State v. Jones*, 473 So.2d 66 (La.App. 3rd Cir.1985). Contra *State v. Williams*, 480 So.2d at 432; *State v. Garrett*, 480 So.2d 412 (La.App. 4th Cir.1985), *writ granted*, 484 So.2d 662 (La.1986); *State v. Coon*, 475 So.2d 33 (La.App.2d Cir.1985); *State v. Swartz*, 444 So.2d 660 (La.App. 1st Cir.1983).

Imprisoning a person solely because he lacks funds to pay the fine was condemned in *Williams*, *Tate* and *Bearden*. That is exactly what happened in this case. The trial court imposed the fine, stated that Williams was indigent and could not pay the fine (without considering the reasons for his inability to pay or other alternatives), and declared that in lieu of payment he would have to serve additional time.

Although the defendant in *Williams* had not yet defaulted on his fine, the court recognized that he would not be able to improve his impoverished condition while serving his prison term and concluded that his sentence was unconstitutional. His sentence was then amended to delete that portion which imposed additional jail time in default of payment of the fine. Unlike in *Helsley*, the fine was left intact.

Likewise, in *State v. Roye*, 501 So.2d 916 (La.App. 2 Cir. 1987), the appellate court found that the portions of defendant's sentences which required him to serve additional periods of incarceration in default of the payment of fines and costs were constitutionally impermissible. The court reasoned:

> The U.S. Supreme Court has held that when the aggregate imprisonment exceeds the statutory maximum and results from an involuntary failure to pay a fine, there is an impermissible discrimination that rests solely on the inability to pay. *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). This rule has consistently been followed in Louisiana appellate decisions. *State v. Helsley*, 457 So.2d 707 (La.App. 2d Cir.1984); *State v. Williams*, 480 So.2d 432 (La.App. 4th Cir.1985), *writ granted*, 484 So.2d 662 (La.1986); and *State v. Plaisance*, 444 So.2d 665 (La.App. 1st Cir.1983).

> However, the Louisiana Supreme Court has apparently extended this rule to provide that the state cannot impose a fine as a sentence and then automatically convert it into a prison term solely because the defendant is indigent and cannot pay the fine, regardless of whether the aggregate sentence exceeds the statutory maximum, relying upon *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Morris v. Schoonfield*, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970) and *Williams v. Illinois, supra*. See: *State v. Garrett*, 484 So.2d 662 (La.1986); *State v. Williams*, 484 So.2d 662 (La.1986); *State v. Pinkney*, 488 So.2d 682 (La.1986).

> Based upon these more recent pronouncements of the Louisiana Supreme Court, by which we are bound, this court, and other appellate courts of this state, have now been required to reverse and set aside, as unconstitutional, jail terms in lieu of the payment of fines assessed to indigent defendants. *State v. Gooden*, 502 So.2d 1180 (La.App. 2d Cir.1987); *State v. Williams*, 489 So.2d 286 (La.App. 4th Cir.1986); *State v. White*, 476 So.2d 1162 (La.App. 3rd Cir.1985); and *State v.*

*Bohanna*, 491 So.2d 756 (La.App. 1st Cir.1986).

> Based on the aforementioned decisions, we are compelled to follow the pronouncements of the Louisiana Supreme Court which hold that the state cannot impose a fine as a sentence and then automatically convert it into a prison term solely because the defendant is indigent and cannot pay the fine, regardless of whether the aggregate sentence exceeds the statutory maximum.

*Id*. at 919. The defendant's prison terms were affirmed, but the sentences were amended to delete that portion which required the defendant to serve one year imprisonment in default of payment of the $5,000 fine and to serve an additional sixty days in jail in default of payment of the $500 fine and costs. As in *Williams*, the court did not disturb the fines and costs.

The second circuit in *State v. Evans*, 506 So.2d 1283 (La.App. 2 Cir. 1987) went a step further and amended both the default time and fees/costs. In *Evans*, the trial court imposed the maximum sentence as a well as a $2,000.00 fine and court costs. In default thereof, an additional one year in jail was ordered. Based on its finding that the defendant was indigent and faced a long term of imprisonment, the fine, court costs and default time were vacated on appeal.

Regarding the excessiveness of a special condition of probation, we note the recently decided case *State v. Standfill*, 44,407 (La.App. 2 Cir. 7/1/09), 15 So.3d 1252. In *Standfill*, the defendant was convicted of simple cruelty to animals and sentenced to six months, suspended, and placed on two years probation. As a special condition of probation, the Defendant was ordered to perform 180 eight-hour days of community service at the local animal control center. On appeal, the defendant argued that the trial court imposed an excessive amount of community service and the appellate court agreed. The court noted that the only mandatory portion of the cruelty to animals statute called for five eight-hour days while the remainder was

discretionary. Considering same, along with the specific facts of the case, the court found that the trial court abused its discretion, and subsequently amended the sentence to impose only the mandatory hours of community service. The court also vacated the rest of the sentence, specifically the six months suspended, and probation with special conditions.

In the instant case, we conclude that the special conditions of probation are excessive, and thus, we find that the trial court abused its discretion. The special conditions of probation are exceptionally onerous for a woman who has been disabled for many years and is on a limited income. Not only is her financial situation unlikely to improve during her imprisonment or while serving probation, her medical diagnoses which pose a serious and ongoing threat to her health are chronic and will not likely improve as she ages. As such, we vacate the special conditions of probation in part, leaving the remainder of the sentence intact. We do not vacate the special conditions that require the Defendant to report to the probation office within twenty-four hours, report monthly to the probation office, and to pay a $56.00 monthly supervision fee.

**CONCLUSION:**

The Defendant's sentence for possession with intent to distribute dihydrocodeinone is affirmed. The Defendant's sentence for possession with intent to distribute cocaine is affirmed and amended by deleting the special conditions of probation, with the exception of reporting to the probation office within twenty-four hours of release, reporting monthly, and paying a $56.00 monthly supervision fee.

**AFFIRMED AND AMENDED IN PART.**